### 1386. THORNTON *et al. v.* THE STATE.

1. Section 214 of the Penal Code, which provides that "Any officer, agent, or director of a bank or banking association of this State, who shall violate the provisions of sections 1934, 1948, 1949 of the Civil Code, or either of them, shall be punished by imprisonment in the penitentiary for not less than one year nor more than twenty years," is applicable only to officers, agents, and directors of banks of issue, provision for such banks being made by sections 1929 to 1952, inclusive, of the Civil Code.
2. A special presentment charging named officers of a State bank with the violation of section 1948 of the Civil Code of 1895, but which fails to allege such bank to be a bank of issue, is defective, and a demurrer pointing out this defect should be sustained.
3. "Where the later of two acts covers the whole subject-matter of the earlier one, not purporting to amend it, and plainly shows that it was intended to be a substitute for the earlier act, such later act will operate as a repeal of the earlier one, though the two are not repugnant." 26 Am. & Eng. Enc. Law (2d ed.), 731 (c) ; *Johnson* v. *Southern Mutual B. & L. Asso.,* 97 *Ga.* 623 (25 S. E. 358) ; *Western & Atlantic R. Co.* v. *Atlanta,* 113 *Ga.* 554 (38 S. E. 996, 54 L. R. A. 294), and authorities there cited. Applying this principle to the act of 1898 (Acts 1898, p. 73), it would seem that the act of 1893 (Acts 1893, p. 66), codified as sections 1929 to 1952, inclusive, of the Civil Code, would be repealed by implication.

Indictment for violating banking law, from Fulton superior court—Judge Roan.  August 25, 1908.

. Argued October 10, 1908.—Decided January 7, 1909.  Judges Russell and Powell being disqualified, Judges Freeman, of the Coweta circuit, and Fite, of the Cherokee circuit were designated to sit in their stead.

*Westmoreland Brothers, Albert H. Cox, Reuben R. Arnold,* for plaintiff in error.

*C. D. Hill, solicitor-general, D. K. Johnston,* contra.

FREEMAN, J.  The grand jury of Fulton county, at the March term, 1908, returned a special presentment against E. H. Thornton and W. F. Manry, charging them with a felony, in that Thornton,

being president and director of the Neal Bank, a banking corporation under the laws of this State, and Manry, being vice-president and director thereof, did violate the provisions of section 1948 of the Civil Code of 1895, by lending to themselves, in the aggregate, more than 25 per cent. of the capital stock of said bank; that this was done by lending to the firm of C. T. Ladson & Company, a partnership composed of C. T. Ladson, E. H. Thornton, and W. F. Manry, $120,000 in money, the property of the bank; that this sum was in the aggregate more than 25 per cent. of the capital stock of the bank, which was, under its charter, authorized to be $250,000, but that as a matter of fact the bank had issued of its authorized capital only $100,000; and that Thornton and Manry together had an interest in the partnership equal to that of Ladson. In a second count it was charged that Thornton and Manry violated the provisions of section 1948 of the Civil Code of 1895, by lending to themselves as officers of said bank more than 10 per cent. of the capital stock of said bank, the loan being made to Ladson & Company, as charged in the first count.

The defendants demurred to the indictment, upon the grounds: (1) Because section 1948 of the Code of 1895 has no application to the Neal Bank, but applies only to such State banks as might issue circulating notes under the act of the legislature of 1893, and there is no allegation in the indictment that the Neal Bank was such a bank of issue. (2) Because the indictment on its face shows that § 1948 of the Code of 1895 was not violated, the loan set out in both counts of the indictment being made to C. T. Ladson & Company, a partnership, and not to the defendants or either of them individually. (3) Because the first count in the indictment, on its face, shows that the joint interest of the defendants in the firm of C. T. Ladson & Company was only equal to that of C. T. Ladson; and hence their portion of the money borrowed was $60,-000, which was less than 25 per cent. of the capital stock of the bank, to wit: $250,000. The demurrer was overruled, and this judgment is excepted to.

1. In 1893 the legislature passed an act (Acts of 1893, p. 66) "to authorize the issuance of circulating notes to the banks and banking associations of this State, to provide for the protection of the same, to provide for the protection of depositors of such bank or banking association, and for other purposes." Section 6 of the

act provides that "one half of the cash paid in on the capital stock shall be set apart and kept on deposit in the vaults of said bank as a fund for the redemption of the bills issued by said bank, and shall be used for no other purpose." Section 20 provides that "it shall be unlawful for any such bank to loan in the aggregate more than twenty-five per cent. of the amount of its capital stock to the officers and directors thereof, or to loan more than ten per cent. thereof to any one of such officers or directors." Section 21 provides that "it shall be unlawful for such bank to loan any of its funds to any person or persons on the indorsement of any of its officers or directors." Section 22 provides that "any officer, agent, or director of such bank, violating the provisions of sections 6, 20, and 21 of this act, or either of them, shall be guilty of a felony, and shall be punished by imprisonment in the penitentiary for a term not less than one year nor more than twenty years." The codifiers placed this act in the Civil Code of 1895, section 6 appearing as §1934, section 20 as §1948, and section 21 as §1948; while section 22 appears as §214 of the Penal Code. Sections 6, 20, and 21 of the act appear in the code in precisely the same language as in the act. Some changes were made by the codifiers in the verbiage of section 22, and as it appears in the Penal Code it reads as follows: "Any officer, agent, or director of a bank or banking association of this State, who shall violate the provisions of sections 1934, 1948, 1949 of the Civil Code, or either of them, shall be punished by imprisonment in the penitentiary for not less than one year nor more than twenty years." Upon comparing section 22 of said act with § 214 of the Penal Code, it will be found that the codifiers changed the words "such bank" to "a bank or banking association," and the word "violating" to "who shall violate." No significance is attached to the latter change, but it is insisted by counsel for the State that the codifiers, by changing "such" to "a," intended to change, and that the General Assembly in adopting the code changed the law, and, instead of a mere codification, made it a felony for the officer, agent, or director of a bank, whether a bank of issue or not, to violate these sections of the code, or either of them. "The intention of the act of December 16, 1895, adopting the present code, and making the same of force, as the Code of Georgia, is to enact into one statute all the provisions embraced in that code. . . The effect of this act is to make a

part of the law of the State all new matter embodied in the Code of 1895 which could be constitutionally enacted by the legislature." *Central Ry. Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). The legislature, in adopting the code, had the power to make the violation of section 1948 by the officers of banks other than banks of issue a felony. We have, therefore, to inquire whether the changes introduced by the codifiers have the effect as contended by counsel for the State. We are of the opinion that the codifiers intended only to put in the code the act of 1893, and that the General Assembly, in passing the act adopting the code, had no intention to make, and did not make, the officers and agents of banks not banks of issue subject to the penalty provided by section 214 of the Penal Code.

The word "such" in § 1948 evidently refers to a bank of issue. Chapter 2 of the Civil Code has for its subject "Private Corporations." Article 1 of this chapter has for its subject "Banks." Section 1 of this article deals with the incorporation of banks, and their powers; section 2 treats of "Regulation of Banks," section 3 of "Examination of Banks," and section 4 of "Circulation of Notes by State Banks." This section contains the act of 1893, and embraces §§ 1929 to 1952, inclusive, of the Civil Code. The whole machinery whereby a State bank can become a bank of issue is set forth in detail. So that "such bank," in § 1948, can refer only to banks of issue provided for in the preceding sections. The prohibition, therefore, against lending more than twenty-five per cent. of the capital to the officers refers alone to banks of issue. This being so, the most natural explanation of the change in verbiage of section 22 of the act of 1893 by the codifiers, as it appears in § 214 of the Penal Code, is that they were separating the penal statutes from the civil. They put the civil laws in the Civil Code, and the penal laws in the Penal Code. But to put section 22 of the act of 1893 in the Penal Code without change would have made it meaningless. "Any officer, agent, or director of such bank, violating §§ 1934, 1948, 1949 of the Civil Code," would have meant nothing, for there would have been nothing preceding for the word "such" to refer to. Hence that word was omitted and "a" inserted instead.

2. This conclusion is shown to be correct from a consideration of other sections of the code, relating to the management of banks generally. It is a familiar rule of construction that sections of

the code relating to the same subject-matter, and which were codified at the same time, must be so construed, if possible, as to harmonize with others. *Gillis* v. *Gillis,* 96 *Ga.* 11 (23 S. E. 107, 30 L. R. A. 143, 51 Am. St. R. 121). Section 1914 provides, that "No bank or corporation doing a banking business shall loan to any officer of the bank without good collateral," and § 1916 limits the amount to be loaned to any one person to not more than ten per cent. of the capital and surplus, unless the same be amply secured by good collateral security. Construing §§ 1914 and 1916 together, both having been codified from the acts of 1890 and 1891, we find that no bank can lend to an officer at all without good collateral, the amount being unlimited. As to others than officers, no loan can exceed ten per cent. of the capital and surplus, unless secured by good collateral security. (Section 1916 was amended in 1898 by striking out the word "collateral," and in 1899 by defining the word "surplus.") Not only was an officer or an agent of the bank prohibited from borrowing its funds without good collateral, but he was made guilty of a crime if he borrowed, even with good collateral, without the permission of a majority of the board of directors, or of a committee of the board authorized to act. Penal Code, § 212. These sections of the Penal and Civil Codes were placed therein by the codifiers at the same time, and along with § 214 of the Penal Code, and §§ 1934, 1948, and 1949 of the Civil Code. The former applies to banks generally, and the latter to banks of issue; § 212 providing the penalty for a violation of the former, and § 214 the penalty for the latter; one being a misdemeanor, the other a felony.

3. The interpretation which we have placed on § 1914, to the effect that the amount which can be loaned an officer who gives good collateral is unlimited, is sustained by legislative interpretation since the code. By an act approved August 15, 1905 (Acts of 1905, p. 74), § 1914 is amended so as to read as follows: "No bank or corporation doing a banking business shall loan to any officer of the bank, without good collateral or other ample security; *and when such loan exceeds ten per cent. of the capital stock of the bank,* it shall not be made until approved by a majority of the directors of the bank, evidenced by their signatures in writing." This act was passed some ten years after the adoption of the code, and evidently the legislative mind did not consider that § 1948 of

the Civil Code or §214 of the Penal Code had any reference whatever to banks generally. It is a clear recognition that the amount an officer can borrow can exceed ten per cent. of the capital of the bank. To this extent, at least, it is in conflict with §1948, by the terms of which no loan can be made to any one officer exceeding ten per cent. of the capital.

4. Even if the question as to whether, in the codification of the act of 1893, it was intended to change the existing law were doubtful, then recourse would be had to the act. This is especially true as to criminal statutes, which must be strictly construed. "The rule is that, unless the contrary manifestly appears from the words employed, the language of a code section should be understood as intending to state the existing law, and not to change it." *Lamar* v. *McLaren,* 107 *Ga.* 599 (34 S. E. 116), and cases cited. "Where the code sections are incomplete or ambiguous, they must be construed in connection with the original acts." *Smith* v. *Evans,* 125 *Ga.* 112 (53 S. E. 589). When section 22 of the act of 1893, from which §214 of the Penal Code is taken, is examined, all doubt disappears, as it applies expressly to the officers and agents of banks of issue.

Inasmuch as the special presentment failed to allege that the Neal Bank was a bank of issue, we think the first ground of the defendants' demurrer should have been sustained. As this ruling disposes of the case, it is unnecessary to pass on the remaining grounds of the demurrer. *Judgment reversed.*