MEMPHIS STREET RAILWAY, COMPLAINANT, APPELLANT, *v.*
E. B. CRENSHAW, DEFENDANT, APPELLEE.

(*Nashville,* December Term, 1932.)

Opinion filed January 7, 1933.

WILSON, KYSER, ARMSTRONG & ALLEN, for complainant, appellant.

J. W. COOPER, Assistant Attorney-General, for defendant, appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This suit was brought to recover taxes paid under protest under statutes compiled in the Code of 1932, as follows:

"1149. Registration of automobiles, etc., through county court clerk; fees therefor.—Before the owner of any automobile, motorcycle, auto truck, electric automobile, or truck or other vehicle of like character used for the purpose of conveying persons or freight or for any other purpose, whether such vehicle is propelled by steam, gasoline, electricity, or any other mechanical power, shall operate or be permitted to operate upon any street, road, highway or any other public thoroughfare in Tennessee, such owner shall register such vehicle with the department of finance and taxation, through the county court clerk in the county in which the owner resides, giving the motor serial number, rated horsepower, tonnage capacity of motor trucks and make of same, together with the name and residence of such owner, and shall pay the following fees: For all motor trucks, freight or passenger, fifty cents per rated horsepower of motor so operated as rated by the Society of Automobile Engineers, and an additional fee for each ton or fraction

thereof carrying capacity (factory rating) as follows: One-half to two tons, inclusive, fifteen dollars; two and one-half tons to three and one-half tons, inclusive, twenty dollars; four to four and one-half tons, inclusive, thirty dollars; five to five and one-half tons, inclusive, forty dollars; six tons and each ton in excess thereof, fifty dollars; for automobiles, motorcycles, or other vehicles of like character, fifty cents per rated horsepower of the motor so operated as rated by the Society of Automobile Engineers; and electric automobiles or trucks, twelve and one-half dollars each, and five dollars per ton carrying capacity (factory rating); and shall receive from the said department a certificate showing such registration on an automobile, motorcycle, auto truck, electric automobile or truck, or other vehicle of like character under this section.''

''1150. Vehicles for hire and tractors.—In addition to the foregoing for all such passenger vehicles operating for hire the following fees: For a two passenger car, four dollars; for a five passenger car, ten dollars; for a seven passenger car, fourteen dollars; and for each additional seat above a seven passenger car, two dollars extra; for all tractors operating upon public roads, streets, or highways, whether propelled by steam, gasoline, or electricity, a fee of twenty-five dollars; for each trailer, whether attached to a tractor or truck, the following fees per ton or fraction thereof (carrying capacity): From one-half of two tons, inclusive, seven dollars and fifty cents; from two and one-half to three and one-half tons, inclusive, ten dollars; from four to four and one-half tons, inclusive, fifteen dollars; from five to five and one-half tons, inclusive, twenty dollars; for six tons and for each ton over six tons, twenty-five dollars.''

"1156. Plate numbers to be furnished and displayed at both ends of automobile.—The owner of such vehicle is required to display, in a conspicuous manner at both front and rear of such vehicle, a number plate of size, color, dimension, and character as the state department of finance and taxation may designate; provided, that the size of the number plate shall be the same each year. The number plate shall show, in addition to the registration number of such machine, the year and the abbreviation of Tennessee; provided, further, that the said state department, through the county court clerk, shall furnish, without additional cost to the owner of such machine a set of two number plates, and owners are required to use these number plates on their machines, and no other number plates shall be used."

The taxes were collected on the theory that certain trolley vehicles, recently substituted for trolley cars on one or more lines in Memphis, are within the terms of the sections of the Code quoted. It appears that these vehicles so substituted differ materially from regular street trolley cars only in that, while using trolleys as the sole instrumentality of propulsion, and similarly limited in routing, no rails are used. We take it to be conceded that the registration statutes invoked do not apply to street cars generally. The insistence of the Railway Company is that neither are these substitutions within these registration statutes.

The learned Chancellor sustained a demurrer to the bill and dismissed it, holding that these cars, or coaches, were at least "electric vehicles," and that looking to the various basic statutes forming the history of the legislation they should be treated as within the scope of these

Code sections now in effect. The Railway Company appeals.

The question is not free from difficulty. Both contentions may be and have been plausibly presented. Some uncertainty,—ambiguity,—appearing, the taxpayer is entitled to consideration, if not determinative application, of the well established rule that a taxing statute is to be construed most liberally in favor of the taxpayer and most strictly against the taxing authority. See our recent cases of *Britt* v. *Cook,* 157 Tenn., 54, and *Bank of Commerce* v. *McCabe,* 164 Tenn., 591, and others cited.

Looking to the objective of the legislature, the rule of intention, something is to be said on both sides. On the one hand, if the object was revenue, it is difficult to conceive why cars, or coaches, vehicles, operated under a single transportation company ownership on the streets of a city, of similar form or design, and for an identical purpose, should be held to be beyond the contemplation of the lawmakers when propelled by trolley, and yet within the statute when not so propelled.

On the other hand, however, we are of opinion that the primary purpose of the law is to secure registration, largely to insure identification, recorded opportunity for the tracing of a rapidly moving class of vehicles of an itinerant, peripatetic, even migratory nature, here, now and elsewhere, quickly, a record of responsible ownership being thereby afforded for the benefit and protection of all who may have claims arising out of the use of such vehicles, and in order that the officers of the law may be enabled to reach and enforce penalties for violations of statutes and ordinances. If this be the primary object of this registration law, then it is difficult to con-

ceive how vehicles thus absolutely confined to fixed routes, of limited extent, and conclusively designated as integral parts of a fixed system, operated by a well recognized single unit ownership, could be contemplated as within the objective of the lawmakers. Clearly, the registration of such vehicles could contribute nothing beneficial whatever.

Now, with this in mind, looking further to the Code Sections, it is apparent that vehicles propelled by trolley, that is, by a vital connection with a fixed central general generating power, absolutely dependent thereon for propulsion, are not in terms included. On the contrary, in apparent recognition of the underlying principle of identification above noted, the descriptive terms used appear to be limited to self-propelled, that is, independent unit operated vehicles, free to follow devious ways, to go and come here and there at the will of the drivers, here today and there tomorrow, free to hit and run and live to kill or maim another day. Consistently with this view, the Code means electric "automobiles" only—not electric trolley cars or coaches. Auto has a clearly distinctive meaning, coming from the Greek *autos*, self. Automobile, self moving, autograph, self indited, autobiography, self told. This Court has defined automobile as a "self-propelled vehicle," *State* v. *Freels*, 136 Tenn., 483, in passing on the original registration Act Chapter 173, Acts of 1905. And, it may be remarked, in passing, the subsequent use of this descriptive term may well be related to this holding of this Court, on the assumption that the legislature took cognizance thereof.

We do not feel authorized, in view of the primary beneficial object evidently sought to be attained by the

registration requirements, to extend the application of the law to electric vehicles which are clearly outside of any recognized definition of "auto," that is, the self-propelled class, fundamentally distinct from that class dependent for propulsion on an outside power source. We are constrained to reverse and remand.