31143. THOMPSON, commissioner, *v.* GEORGIA POWER COMPANY.

DECIDED MARCH 1, 1946.   REHEARING DENIED MARCH 26, 1946.

*J. Eugene Cook, attorney-general, E. J. Clower, Victor Davidson,* and *Claude Shaw, assistant attorneys-general,* for plaintiff.

*MacDougald, Troutman & Arkwright, T. M. Smith,* for defendant.

Sutton, P. J. (After stating the above facts.) The execution involved in the present case issued under the provisions of the act approved December 24, 1937 (Ga. L. Ex. Sess. 1937-38, pp. 259 et seq.; Code (Ann. Supp.), §§ 92-2901 et seq.), which states in part: "For the purpose of this law, the following definitions shall

apply: (A) Motor bus. Any passenger-carrying motor vehicle having a passenger-seating capacity of eight or more persons. . . The annual fees for the licensing of the operation of vehicles shall be as follows for each vehicle registered: . . (9) Motor busses. For each motor bus (used as a common or contract carrier for hire), the following: . ." The fee for each bus is determined by its factory weight.

It will be observed that this act does not define "vehicle" or "motor vehicle," and the plaintiff in fi. fa. earnestly insists that these terms as used in this act should be given the meaning provided in the act of 1927 (Ga. L. 1927, p. 227; Code, § 68-101), which states in part: "For the purpose of this law, the following definitions shall apply: 'Vehicle'—Any contrivance used for transportation of persons or property on public highways. 'Motor vehicle'—Any vehicle, except tractors, propelled by power other than muscular power, not operated exclusively upon tracks." The defendant in fi. fa. contends that, since the terms "vehicle" and "motor vehicle" are not defined in the act approved December 24, 1937, in construing this act, these terms should be given their usual, ordinary, and popular meaning, and that when this is done, the trackless trolleys in question are not within the provisions of that act. In considering this question, we quote from the well-prepared and able opinion filed by Judge Almand, who tried the case in the court below, without the intervention of a jury: "Conscientious and diligent counsel for the State argue with great ability and sincerity that, under the definition of a 'motor bus' in the acts of 1937-38, and of the words 'vehicle' and 'motor vehicle' in the act of 1927 (Code, § 68-101), it makes no difference how the passenger-carrying vehicle of more than eight persons is propelled, whether by its own power or from power received from outside sources, for as long as such vehicle does not run on tracks, it is a 'motor vehicle,' and therefore a 'motor bus.' These definitions, standing alone, do seem to justify the State's position, but when the legislative history and context of the licensing acts in regard to motor vehicles, their regulation as to the use of the public highways, and the statutory methods of taxation are examined, we find these statutes include only those vehicles operated or drawn by its own self-propelled power. We think that a brief review of the legislative history as to the licensing and regulation

of automobiles or motor vehicles, as well as a review of the contemporaneous development and use of motor busses and trackless trolleys will demonstrate that the licensing and regulating statutes as are now contained in chapter 68-1 of the Code of 1933 only apply as to those vehicles that are capable of being operated *generally* over the public highways and roads of this State by reason of their own self-propelled mechanical power, and not to those vehicles whose orbit of operation is limited to the length of a trolley wire constructed and maintained under a franchise.

"The first comprehensive law dealing with the registration of automobiles was enacted in 1910 (Ga. L. 1910, p. 90). The act was entitled 'An act to regulate the running of automobiles, locomotives, and other vehicles and conveyances of like character, propelled by steam, gas, gasoline, electricity, or any power other than muscular power, upon the public and private roads of the State of Georgia.' Every vehicle paid the same registration fee, and there were no distinctions or differences made as to passenger cars, trucks, etc. Apparently at that time there were no such vehicles known as 'trucks, trailers, or busses.' In 1915 (Ga. L. Ex. Sess. 1915, p. 107) a new and comprehensive registration, regulation, and license act was passed, the caption being 'An act providing for the annual registration and identification of motor vehicles and motorcycles.' The term 'motor vehicles' was defined as 'all vehicles propelled by power other than muscular power except road rollers, traction engines, railroad and railway cars, and motor cars running only upon stationary rails or tracks.' There was a schedule of fees which each machine had to pay, which was rated upon the horsepower of the machine. This act also dealt with the regulation as to speed, and use of highways by motor vehicles. It will thus be seen that, whereas the act had formerly dealt with the term 'automobiles,' the growth of the motor car had been such that the word 'automobiles' included other types of machines, and they were all described as 'motor vehicles.' It is also observed that this act, like the act of 1910, dealt with motor vehicles that used the highways and public roads generally.

"In 1927 (Ga. L. 1927, p. 226) there was enacted another comprehensive motor vehicle act, which is now codified in chapter 68-1 of the Code of 1933. The title of this chapter is 'Motor Vehicles.' Part 1 deals with the licensing, registration, and

operation of motor vehicles, and part 2 deals with the motor-vehicle transportation under three categories, namely: motor contract carriers, motor common carriers, and motor vehicles for hire, regulated. The caption of the act of 1927 is 'An act to amend an act known as the Georgia Motor Vehicle Law, approved November 30, 1915, and as amended by subsequent acts.' It will be seen from this act that it not only defines a 'vehicle' and 'motor vehicle,' but defines specific classes of motor vehicles which are subject to licensing and registration, namely, motorcycles, tractors, trailers, and trucks. License fees on passenger cars were based upon the weight of the machine. On non-passenger cars, the tax was graduated according to the tonnage capacity of such car. There is no mention in this act of the term 'motor bus.' Apparently, in 1927 the term 'motor bus' had not developed to an extent that it had a separate classification for registration and license purposes from that known as 'passenger-carrying motor vehicles.' This act dealt extensively with regulations of the use of the highways as to speed, rules of the road, etc., and the restrictions as to speed were regulated according to the weight of the vehicle and the character of the tires—whether metallic, solid, or pneumatic.

"At the regular session of the General Assembly in 1937 (Ga. L. 1937, p. 155) an act was passed 'To provide for the levy of a tax to be known as a maintenance tax to be paid by the owners of motor busses, trucks, and/or trailers, operating over the public roads of this State; to repeal chapter 92-29 of the Georgia Code of 1933.' This act defines a motor bus as 'any passenger-carrying motor vehicle, having a passenger-seating capacity of eight or more persons.' . . This act sets up a schedule of taxes on busses, trucks, trailers, . . graduated according to the weight of the vehicle. It provides for the method of registration in obtaining tags, and does not in any manner deal with the use of the highways as to speed, etc.

"At this same session, the legislature passed acts dealing with motor carriers and motor common carriers (pp. 727-30).

"At the 1935 session, the act of 1927 was amended so that all motor vehicles were required to pay a flat tax of $3.

"At the 1937-38 Extra Session (Ga. L. 1937-38 Ex. Sess. p. 259), the legislature passed an act which was entitled 'An act to

amend title 68 of the Code of 1933 by striking all of section 68-211 of said title and chapter, which provides a schedule of annual fees for motor vehicles.' In the body of the act, section 1 repeals section 68-211 of the Code, which section provides a schedule of annual fees for vehicles; and section 2 repeals the maintenance tax act of the 1937 regular session. Section 3 is identical with section 2 of the previous 1937 maintenance tax act, in defining motor busses, trucks, and trailers, except for a part of the definition of a trailer that is not carried forward in this act. This act then fixes a licensing and registration schedule for passenger cars, trucks, trailers, etc., graduated according to the weight of the car. The act provides for registration and issuance of licenses, and there is a general repeal clause. There is nothing in this act that deals with the regulation and use of highways and apparently what this act does is to take from section 68-1 [68-2] of the Code all matters dealing with [the schedule of annual fees for the] registration and licensing of motor vehicles, repealing the maintenance act of 1937, and thereby putting into one comprehensive law [the fees to be collected for] the licensing and registration of all motor vehicles used on the public highways. Though the caption of the act says that it is an amendment to section 68-1 [68-2] of the Code, there is nothing in the body of the act which indicates that it was the purpose of the legislature to treat this act in its entirety as an amendment to section 68-1 [68-2] or to become a part of said chapter. It is apparent that there was no effort to carry forward into the act of 1937-38 all the definitions set forth in section 68-101, for the reason that it specifically picks out *only three vehicles* for classification, to wit: *motor-busses, trucks, and trailers,* and of these, trucks and trailers are defined in section 68-101. It is thus apparent, by the enactment of a comprehensive law dealing with [annual fees for] registration and licensing of motor vehicles, the legislature impliedly repealed any and all provisions of Chapter 68 that dealt with [annual fees for] registration and licensing of motor vehicles. Compare *City of Atlanta* v. *Goodman, 183 Ga.* 834 (189 S. E. 829), and *Horn* v. *State,* 114 *Ga.* 509 (40 S. E. 768)."

While the act approved December 24, 1937 (Ga. L. Ex. Sess. 1937-38, p. 259; Code (Ann. Supp.), §§ 92-1901 et seq.), was entitled an amendatory act, it did not purport to be merely cumula-

tive or auxiliary to the former act on the same subject, but it was a comprehensive act covering the entire subject of the levying of annual license fees for the registration and licensing of the operation of motor vehicles, and it was evidently intended by the legislature as a complete revision of and substitute for the former acts in so far as they dealt with fixing the annual license fees for the registration and licensing of the operation of motor vehicles. "It is a familiar and well-settled rule that a subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former one to the extent to which its provisions are revised and supplied. This is true, even though the subsequent statute contains no express words of repeal and is not repugnant to the former statute. The revising statute is in effect a legislative declaration that whatever is embraced in the new statute shall prevail, and whatever is excluded therefrom shall be discarded." 59 C. J. 921. "Thus, where a section which is expressly amendatory of another section of a statute purports to set out in full all it is intended to contain, any matter which was in the original section, but is not in the amendatory section, is repealed by the omission." 50 Am. Jur. 556. Since the act approved December 24, 1937 (Ga. L. Ex. Sess. 1937-38, p. 259), was a complete revision of and substitute for the earlier acts, in so far as they dealt with providing a schedule of fees for the licensing and registration of motor vehicles, it was, in effect, a legislative enactment that so much of the earlier act as was embraced in the new statute should prevail, and so much of the earlier act as was not embraced in it, in so far as it dealt with the collection of an annual fee for the registration and licensing of motor vehicles, should be discarded. "Where some parts of the revised statute are omitted in the new law, they are not, in general, to be regarded as left in operation, if it clearly appears to have been the intention of the legislature to cover the whole subject-matter by the revision." *Hardy* v. *State, 25 Ga. App.* 287, 288 (103 S. E. 267). The definitions of "vehicle" and "motor-vehicle," which were contained in the act approved August 23, 1927 (Ga. L. 1927, pp. 226-44; Code, § 68-101), were not included in the definitions set out in the act approved December 24, 1937 (Ga. L. Ex. Sess. 1937-38, p. 259); and for the purpose of

construing the provisions of this act, these terms will be given their ordinary signification. Code, § 102-102. If a statute is plain and susceptible of but one construction, the courts have no authority to place a different construction on it, but must apply it according to its terms. *State Revenue Commission* v. *Brandon,* 184 *Ga.* 225 (190 S. E. 660). See also, *Barnes* v. *Carter,* 120 *Ga.* 895, 898 (48 S. E. 387); *Fidelity & Casualty Co.* v. *Whitaker,* 172 *Ga.* 663, 668 (158 S. E. 416); *Goldstein* v. *State Revenue Commission,* 50 *Ga. App.* 317 (3) (178 S. E. 164). However, if a statute levying taxes is not clear and positive as to its terms, or if it is open to various interpretations through indefiniteness of its provisions, it is to be construed most strongly against the government and in favor of the citizen or subject, and its provisions are not to be extended, by implication, beyond the clear import of the language used. Revenue laws are neither remedial statutes nor laws founded upon any permanent public policy, and are not, therefore, to be liberally construed; and whenever there is a just doubt, that doubt should absolve the taxpayer from his burden. *Fulton Metal Bed Mfg. Co.* v. *State Revenue Commission,* 52 *Ga. App.* 159, 161 (182 S. E. 803). See also *Mayor &c. of Savannah* v. *Hartridge,* 8 *Ga.* 23; *Case-Fowler Lumber Co.* v. *Winslett,* 168 *Ga.* 808 (149 S. E. 211); *Mystyle Hosiery Shops* v. *Harrison,* 171 *Ga.* 430 (155 S. E. 765); *McIntyre* v. *Harrison,* 172 *Ga.* 65 (157 S. E. 499); *Davison* v. *F. W. Woolworth Co.,* 186 *Ga.* 663 (198 S. E. 738, 118 A. L. R. 1363); *Warren* v. *Suttles,* 190 *Ga.* 311, 314 (9 S. E. 2d, 172); *Forrester* v. *Continental Gin Co.,* 67 *Ga. App.* 119, 127 (19 S. E. 2d, 807). The act approved December 24, 1937 (Code, Ann. Supp., §§ 92-2901 et seq.), imposing the registration and licensing fee does not specifically refer to "trackless trolleys," and unless they come within the general definitions of that act and are to be classed as "Motor busses" as that term is defined in the act, they are not included within the provisions of the act. Since the act is one levying a tax, any just doubt as to whether or not the taxpayer is included within the provisions of the act should be resolved in favor of the taxpayer and against the State Revenue Commissioner, under the authorities cited above. A motor bus is defined by the act as "Any passenger-carrying motor-vehicle having a passenger-seating capacity of eight or more persons." Code (Ann. Supp.), § 92-2901.

Hence, whether or not a trackless trolley is a motor bus within the meaning of the act, depends on whether it can be said to be a motor vehicle as that term is used in the act.

In 42 C. J. 609, a motor vehicle is defined as "a vehicle operated by power developed within itself and used for the purpose of carrying passengers or materials." Another definition is that a motor vehicle is "a vehicle moved by inanimate power of any description, generated or stored within it, and intended for the transportation of either goods or persons on common highways." American-LaFrance Fire Engine Co. Inc. v. Riordan, 6 Fed. 2d, 964. In the present case, the electricity which causes the movement of the trackless trolleys is neither generated nor stored within the trolleys, but is derived from outside sources by means of contact of the trolley poles with electric wires bringing the electricity from stationary plants which generate it. In the recent case of *Georgia Power Co.* v. *Clark,* 69 Ga. App. 273, 276 (25 S. E. 2d, 91), this court said: "The word 'vehicle,' in general, lends itself to a variety of meanings. . . But to ascertain the meaning of the word in a given instance resort must be had to its context. It has been ruled, and we know of no holding to the contrary, that 'A vehicle is any carriage or conveyance used or capable of being used as a means of transportation on land. The word 'vehicle will not ordinarily include locomotives, cars, and streetcars, which run and are operated over and upon a permanent track or fixed way, and it will not be held to include them unless the context of the ordinance or statute clearly indicates an intention to do so.' Conder v. Griffith, 61 Ind. App. 218 (111 N. E. 816), and cit. Here the word 'vehicle' is used in an ordinance manifestly designed to regulate traffic, and to regulate it 'over any street or *roadway*' (italics ours) of the City of Atlanta. Streetcars are generally operated upon the *streets* of a city. In a more populous city they may to some extent traverse roadways beyond the city limits; but we think it may safely be said that normally upon *roadways* it is some vehicle other than a streetcar that is to be found. . . Indeed, we think that this court may take judicial cognizance of the fact that in speaking of a vehicle upon a roadway one does not, in the usual sense, have in mind a streetcar, but another means of travel or transportation, such as an automobile, a bus, a truck, or a wagon. Considering the context here,

we hold that the word 'vehicle' as used in the ordinance in question, does not include a streetcar."

The manifest purpose of the act of December 24, 1937, was to require each motor vehicle capable of operating generally over the highways and roadways of this State to be registered and a license obtained for its operation. When speaking of a motor vehicle on the highways and roadways of this State, one does not, in the usual sense, have in mind a trackless trolley whose power is derived from outside sources, and whose travel is limited to within a few feet on either side of previously constructed electric wires with which contact must be maintained at all times by such trackless trolley; but one has in mind other means of travel or transportation, such as automobiles, motorcycles, trucks, busses, or other vehicles which are capable of traveling generally over the highways and roadways of this State, and the motive power of which is either stored or generated within them.

The argument of counsel for the plaintiff in fi. fa., that, to hold that trackless trolleys are not within the provisions of the act approved December 24, 1937 as amended (Code, Ann. Supp., §§ 92-2901 et seq.), would render the act unconstitutional because of lack of uniformity upon the same class of subjects, is untenable. While all taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, this does not mean that the State can not make fair and reasonable classifications of property for taxation. There is a substantial difference between trackless trolleys, which operate on fixed and limited routes, the motive power of which is derived from sources outside the trolleys, and which may be operated only where overhead electric wires have been previously constructed, and motor busses the motive power of which is stored or generated within them, and which may be operated generally over the highways and roadways of this State.

It will be observed from a study of the various acts relative to the licensing and operation of automobiles and motor vehicles in this State, that the terms "motor vehicle" and "automobile," as used in our statute law, are practically synonymous. A passenger car, a truck, a tractor, or a motor bus are each a different kind of automobile and are each included within the general terms "motor vehicle" and "automobile." The word "automobile," which was

generally used to designate this type of vehicle, comes from the Greek word "autos" meaning "self" and the Latin word "mobilis" meaning "mobile" or "capable of moving," and hence the word "automobile" literally means "self-moving" or "self-propelled," and a passenger car, a truck, a motor bus, and a tractor are each self-moving or self-propelled vehicles. However, a trackless trolley was not derived from automobile, nor is it a kind of automobile, but it is a distinct and different type of vehicle. The word "trolley" comes from the middle English word "trollen," old French "troller" which meant to roll or to wander about, and, while it had other meanings, came to refer to several types of small vehicles including those used in shops and mines which ran on overhead wires or rails. In this sense, it came to refer to streetcars which ran on rails and which drew their propelling power from overhead electric wires. "Trolleycar" and "streetcar" are thus synonymous terms and mean a vehicle operating on rails which draws its power from stationary plants by means of contact with electric wires constructed over, or sometimes under, the rails on which it operates. From streetcar came the trackless trolley. The power-propelling system is the same for each. A trackless trolley derives its power from stationary plants through contact with overhead electric wires, the main difference between a streetcar and a trackless trolley being that a streetcar operates only on rails, while a trackless trolley operates on pneumatic tires. While an automobile is self-propelled, in that it carries its source of power within itself, a trackless trolley is propelled by the use of power received from outside sources by means of contact with overhead electric wires. Hence, a trackless trolley is not an automobile or a motor vehicle within the generally accepted meaning of those terms.

The error, if any, in allowing the amendment to the affidavit of illegality without the affidavit required by the Code, § 39-1005, was harmless, since it appeared under the evidence that the trackless trolleys were not subject to the license fees for which the execution issued. The judgment in the cause would have been the same whether the amendment had been allowed or not, and, hence, the allowance of the amendment had no substantial bearing on the case. *Marsh* v. *Hix*, 110 *Ga.* 888 (36 S. E. 230). See also

*Ocmulgee Guano Company* v. *Price,* 18 *Ga. App.* 206 (3) (89 S. E. 156).

The findings of fact by the trial judge, trying the case without the intervention of a jury, are supported by evidence, no error of law appears, and the judge did not err in overruling the motion for a new trial as amended.

*Judgment affirmed. Parker, J., concurs, and Felton, J., concurs specially.*

FELTON, J., concurring specially. The first question for decision is whether under the act of 1937 there is a statutory definition of motor vehicle, and if so then the question arises as to what that definition was intended to include. The majority opinion holds that there is no statutory definition of motor vehicle under the act of 1937 or prior acts, because the act of 1937 repealed all other definitions of motor vehicles in laws relating to licensing of vehicles, etc., and pitches its conclusion on the general definition of "motor vehicles." The purposes of the act of 1927 (Ga. L. 1927, p. 226), are stated in the caption of the act as follows: "An act to amend an act known as the 'Georgia Motor-Vehicle Law,' approved November 30, 1915, and as amended by an act approved August 20, 1918, and as amended by an act approved August 16, 1919, and as amended by an act approved August 15, 1921; to provide for a Commissioner of Vehicles; to define terms used; to provide for registration of motor vehicles, tractors, trailers, dealers, and manufacturers of motor-vehicles, and chauffeurs, and to provide fees for said registration; to describe number plates and provide for fastening them on certain vehicles; to provide for the regulation of lights and brakes to be used; to regulate the use of highways by vehicles registered in another State; to provide traffic regulations; to regulate size, weight, and type of wheels of certain vehicles; to provide for regulation of motor-vehicles by municipalities; to provide for the expense of registration and the disbursement of fees received; to prescribe duty and salary of registration clerk and salary of Commissioner of Vehicles; to prohibit throwing certain things on the highways; to provide for the enforcement and penalties for violation of this act; and to repeal all laws and parts of laws in conflict with this act, and for other purposes." The act of 1927 contained the following definitions: " 'Vehicle'—Any contrivance used for

transportation of persons or property on public highways. 'Motor-vehicle'—Any vehicle, except tractors, propelled by power other than muscular power, not operated exclusively on tracks. 'Motor-cycle'—Any motor-vehicle having but two main wheels in contact with the ground, upon which the operator sits astride. A motor-cycle may carry a one-wheel attachment generally known as a side-car. 'Tractor'—Any *self-propelled* vehicle designed for use as a traveling power-plant or for drawing other vehicles, but having no provision for carrying loads independently. 'Trailer'—Any vehicle without motive power, designed for carrying persons or property either partially or wholly on its own structure and for being drawn by a *self-propelled* vehicle, except those running exclusively on tracks. . . 'Trucks'—'or non-passenger carrying motor vehicles'—A motor vehicle for the transportation of property." These definitions are embodied in the Code of 1933, § 68-101. At this point it is well to say that it seems undebatable that the legislature by the 1937 act intended to substitute the enactments therein as to fees and registration, etc., in lieu of the laws stricken and repealed thereby. It did not intend to discard the definitions, contained in the previous acts and the 1927 act codified, which were necessary then and now for the *general* purposes of the previous acts and the act of 1927 codified and the *limited* purposes of the act of 1937. It seems to be reasonable to conclude that the legislature's intention was to retain all of the definitions contained in the 1927 act codified and previous acts, except as *changed and added* to by the act of 1937. There is a vast difference between the effect of amending a Code section and a legislative act uncodified. In amending a Code *title* by striking a section which provides for fees and providing for new fees, it does not matter whether the amendment explicitly states that the new section shall take the place of the old. The new section becomes a part of the title and the whole as amended must be followed. "Where a new section of a statute is substituted for an old one, other statutory provisions relating to the old one, and not inconsistent with the new one, remain in force and are applicable to the latter." 50 Am. Jur. § 553, p. 558. If it can be said that the act of 1927 superseded all previous acts, in that it was so comprehensive as to include all previous subject-matters, this is not true of the act of 1937, because it dealt with certain specific subject-matters and

not with the *whole general subject-matter* which had been codified and later amended. In the 1937 act, it is provided: "For the purpose of this act the following definitions shall apply: A. Motor-Bus. Any passenger-carrying motor vehicle having a passenger seating capacity of eight (8) or more persons. B. Trucks. A motor vehicle for the transportation of property, which shall include any self-propelled vehicle designed for use as a traveling power plant or for drawing other vehicles but having no provision for carrying loads independently, except what are known as farm tractors. C. Trailer. Any vehicle without motive power, designed for carrying persons or property either partially or wholly on its own structure and for being drawn by a self-propelled vehicle and operated over the public roads of this State." It will be observed that the definition of a *motor bus* is a new definition, not included in the 1927 act, and simply distinguishes between automobiles and busses. The definition of a trailer was amended to provide that it should be operated over the highways. It is unthinkable that the legislature, by making these slight changes in the old definitions, intended to abandon the old ones and then proceed to fix fees and charges based on the old definitions, or based on general definitions, the meaning of which would be uncertain and subject to judicial determination at a future time. The fact that the 1937 law was not put in the place of the repealed sections in the Code Pocket Parts, but were placed under title 92 (Public Revenue) means nothing. Such placing was doubtless the result of the fact that by the reorganization act (Ga. L. 1931, p. 34, § 84), the duties of the commissioner of motor vehicles were transferred to the State revenue commission and the office of commissioner of motor vehicles was abolished. Be that as it may, it is not where the law is but what the law is that is important. It seems to me that the conclusion is demanded that there was no intention to abandon the definitions of the 1927 act by implication, and the citations of the majority opinion do not, to my mind, support its conclusion under the facts of this case. *Shipp* v. *Georgia Power Co.*, 67 *Ga. App.* 867, 872 (21 S. E. 2d, 458), in which the Code definition of motor vehicle was followed.

The caption of the act of 1937 states that its intention is to amend title 68, chapter 68-2 of the Code of 1933 by striking all of section 68-211 "and inserting in lieu of

section 68-211 . . *so as to provide a new schedule of fees* for all motor vehicles, including automobiles, motorcycles, busses, trucks, trailers, and semi-trailers, ambulances, and hearses, etc." Section 4 of the act, which provides for the new schedule of fees, does not specifically state that it is enacted in lieu of the Code, § 68-211, but if there is a doubt as to the meaning of the act in this respect, the caption can be looked to, to ascertain the meaning of the act. It is not necessary that there be ambiguous terms or words in the act. *State Board of Education* v. *Board of Education of Richmond County,* 190 *Ga.* 588 (10 S. E. 2d, 369). "Where the later of two acts covers the whole subject-matter of the earlier one, not purporting to amend it, and plainly shows that it was intended to be a substitute for the earlier act, such later act will operate as a repeal of the earlier one, though the two are not repugnant." *Thornton* v. *State, 5 Ga. App.* 397 (63 S. E. 301), and cases cited. "It has been held that, while as a general rule a statute which revises the subject-matter of a former one works a repeal without express words to that effect, yet where the later act contains a provision like that contained in the act of 1879, to the effect that all laws and parts of laws in conflict with the act are thereby repealed. . . Whether this is so or not, we think it is clear that there can be no repeal by implication of a provision the subject-matter of which is not dealt with at all in the later act, and which is not in any way inconsistent with or repugnant to that act." *Johnson* v. *Southern Mutual Building & Loan Association,* 97 *Ga.* 622 (25 S. E. 358). The act of 1937 does not deal with the *entire* subject-matter of the act of 1927, and does not contain matter inconsistent with or repugnant to it. The majority opinion cites the case of *City of Atlanta* v. *Goodman,* 183 *Ga.* 834 (189 S. E. 829). In that case the legislature did not attempt to amend all or any part of a previous act. The act of 1935, which was held to have repealed a prior act codified, did not amend anything but was a comprehensive tax act passed as a substitute for existing laws on the subject.

The question then is, does the definition of a motor vehicle in the 1927 act (Code, § 68-101) include a trackless trolley? In my opinion, construing the definition in the light of the act as a whole, it does not. The first comprehensive act on the subject of registration of and regulation of operations of motor vehicles

was passed in 1910 (Ga. L. 1910, p. 90). The caption stated that it was "An act to regulate the running of automobiles, locomobiles, and other vehicles and conveyances of like character propelled by steam, gas, gasoline, electricity, or any power other than muscular power, upon the public and private roads of the State of Georgia." Section I of the act, among other things, stated that said vehicles would thereafter in the act be called "machines." In addition to the use of the word "machines," in section 9 the act uses the word "automobile," in my opinion synonymously with "machines." Section 2 provided that the owner of the machine should file with the Secretary of State a statement, among other things, of the name of the maker of the machine, factory number, *style* of machine and motor power. Section 7 provides: "That a person operating a machine shall, at request or on signal by putting up the hand or other sign of distress of a person riding, leading, or driving a restive horse or other draft animal, bring such machine immediately to a stop, and if traveling in the opposite direction, remain stationary so long as may be reasonable to allow such horse or animal to pass, and if traveling in the same direction, . . and in case such horse or animal appears frightened or the person operating such machine is requested to do so, such person shall cause the motor of the machine to cease running so long as shall be reasonably necessary to insure the safety of others." Construing this act as a whole, I think that it was meant to cover vehicles which were generally called automobiles. An automobile is a "*self-propelled* vehicle suitable for use on a street or roadway." 1 Blashfield's Cyclopedia of Automobile Law, p. 2, § 2. It was held in Memphis Street Railway *v.* Crenshaw, 165 Tenn. 536 (55 S. W. 2d, 758) that a trackless trolley is not an automobile. The act of 1915 (Ga. L. Ex. Sess. 1915, p. 107) was the next comprehensive act dealing with all or virtually all of the subject-matters contained in the act of 1910. This act, in my opinion, referred solely to *self-propelled* motor vehicles. It taxed passenger-carrying vehicles (except one) on a horsepower basis and non-passenger-carrying vehicles by weight. The act contemplated that all vehicles (except one kind) were self-propelled by cylinder motors. The National Automobile Chamber of Commerce ratings for horsepower and ton weight were declared to be the standard for determining the class of vehicles taxed. The exception referred to

was electrically operated vehicles used for pleasure. I think that it is obvious that what was intended was a *self-propelled* vehicle, operated by a battery within the vehicle. I can find no indication in the 1915 act that the legislature intended to change the definition of the nature and kind of vehicles which it intended to tax by a change in the *method* of taxation, or scale of fees. The act of 1919 (Ga. L. 1919, p. 256), amended the 1915 and 1918 acts. It struck section 6 of the 1918 act which fixed the fees for the various vehicles, and substituted a new section which also fixed the fees. There is no indication in the act of 1919 that there was any intention of doing anything but change the fees. Another comprehensive act was passed in 1927 (Ga. L. 1927, p. 226). The caption of this act shows that the legislature did not regard the acts of 1915, 1918, 1919, and 1921 as superseded, although as to some of them the section as to fees was stricken and new sections on fees were added. The last paragraph of § 2 of the act of 1927 provides: "The National Automobile Chamber of Commerce horsepower-rating formula is hereby adopted as the standard for determining the horsepower of passenger-carrying vehicles." This provision is codified (§ 68-102). This formula provides for ascertaining the horsepower of a vehicle by a computation involving the number of cylinders in the motor of the vehicle and the size of the cylinder bores. Such a formula would not give the horsepower of a trackless trolley. In § 12, subparagraph (j) the act of 1927 provides that "The operator shall not use the cutout of a motor vehicle while on the highways of this State." This alone would not be conclusive, but it helps, along with other indications, to show what the legislature intended. Section 3 of the act of 1927 provides that the application for registration shall contain a description of the vehicle to be registered, including its *model,* which, so far as I know, does not apply to trackless trolleys in the sense that it is used in relation to automobiles. The act of 1927 as well as that of 1937 defined a trailer as being a vehicle without motive power of its own, designed for being drawn by a self-propelled vehicle, as pointed out above.

It is worthy of note that, where a special-type vehicle other than cylinder-operated vehicles was to be included, the General Assembly did not leave the classification and registration of such conveyance to be covered by the general definition of vehicle, but

went to the trouble to enumerate and provide for its registration. See Ga. L. Ex. Sess. 1915, p. 109, § 6, wherein it was provided that "for each electric-motor vehicle used for pleasure purposes" a fee of four dollars was to be paid. My conclusion then is, that the legislature in the act of 1927, in defining a motor vehicle, meant a self-propelled motor vehicle, and that a trackless trolley is not included in that term because the power to operate it must come from without *at the time of operation.* I do not think that we can reach the conclusion that such trolleys are not within the definition, by getting rid of the statutory definition. Nor can we do so by saying that a trackless trolley is a streetcar because, if the definition of a motor vehicle included a streetcar, it would be a motor vehicle. Nor did the law permitting the trolleys to be substituted for streetcars furnish a reason for exempting them from the tax if they otherwise come within the definition, because the Code, § 94-1010, provides that nothing therein contained should exempt trackless trolleys and the operation thereof from any other taxes or licenses now imposed by law. The acts of the legislature did not in their definitions of motor vehicles, as construed from the contexts, include other than self-propelled vehicles. The court has just recently construed another act by its context, and this and similar cases are satisfactory authority for my conclusion. *Gainesville Midland R. Co.* v. *Allen,* 72 *Ga. App.* 736 (35 S. E. 2d, 12). The terms defined in the Code are to be construed in the light of the history and meaning of the various acts codified. I can see no indication in any act, codified or not codified, which evidences an intention on the part of the legislature to change the description of the general *kind* of vehicles taxed. All the changes are relative to other matters entirely, amounts of fees, or definitions of vehicles of the same kind as originally intended, which distinguish vehicles or take in others of the same nature as those already taxed.

While a New York court did not have the trackless-trolley question before it, it held that a motor vehicle, as defined by a New York statute, included what is generally known as an automobile, and nothing else. That statute defined motor vehicles as *all vehicles propelled by any power other than muscular power,* with certain exceptions, none of which was a trackless trolley or similar vehicle. People *v.* Congress Radio Inc., 133 Misc. 542 (232 N. Y. Supp. 647).