## BAKER vs. THE STATE.

The rule in relation to the joinder of different offences in one indictment, is as plain and well settled as that in relation to the joinder of several causes of action in one declaration.

Offences of the same character, though differing in degree, may be united in the same indictment, and the prisoner tried on both at the same time, and convicted of one and not of the other.

The law is now well settled, that different offences may be charged in the same indictment, if the offences are subject to the same punishment.

Since the passage of the act "modifying the penal code to correspond with the establishment of a penitentiary," the punishment for maiming, (in which offence shooting or stabbing a person is included), is imprisonment in the penitentiary : for shooting *at* a person, with intent to kill, imprisonment in the common jail of the county.

Still, counts for each of these offences may be joined in the same indictment; or, in any event, if this is objectionable, the objection should have been addressed to the discretion of the Court below, before conviction. That Court, in its discretion, might have quashed the indictment, or compelled the prosecutor to elect on which charge he would proceed.

It is no ground for a motion in arrest of judgment, nor objectionable on demurrer or upon writ of error; and a general verdict of guilty, on both counts, is good.

And upon such an indictment, for shooting at, and for shooting A. B., evidence that A. B. was a constable, then engaged in arresting the prisoner, in the discharge of his official duty, is admissible, although there is no mention of his official character in the indictment.

The statute defining maiming to be "unlawfully disabling a human being, by depriving him of the use of a limb, or member, or rendering him lame, or defective in bodily vigor," it is implied that the act, being unlawful in itself, evidences a malicious intent; and it is immaterial by what means, or with what instrument, the injury is effected, or whether the party is deprived of the use of a limb or member, or rendered *permanently* lame, or whether his bodily vigor is merely affected, by his strength, activity, or the like, being decreased.

And if the proof is that the party was shot, and thereby so far disabled as to be unable to walk at the time, there being no other evidence showing the wound to have been but temporary, or that the party had recovered, the disabling is sufficiently established, and is presumed to have continued.

In the case before mentioned, if the verdict is guilty on both counts, and the jury assess the punishment to be imprisonment in the penitentiary, which punishment could only be inflicted under the second count, if the judgment of the Court is entered on the first count, it is erroneous; but a new trial will not be granted, or the prisoner discharged. The case will be remanded, and the Court directed to enter judgment in conformity to the verdict.

THIS was an indictment tried in the Pulaski Circuit Court, in March, A. D. 1841, before the Hon. JOHN J. CLENDENIN, one of the Circuit Judges. The indictment contained two counts, one " for shooting at *Jacob Faulkner*, with intent to kill," and the other " for shooting, wounding, and disabling Jacob Faulkner." The jury found the prisoner guilty on both counts, and assessed his punishment at five years imprisonment in the penitentiary. The Court sentenced him accord-

Baker *vs.* The State.

ingly, "for shooting at, with intent to kill." The defendant appealed. When the appeal came into this Court, it was discovered that no valid judgment had been entered; a writ of *procedendo* issued to the Court below, directing them to enter judgment according to law. Judgment was accordingly entered, in September, 1841; and the defendant again appealed.

The facts of the case, as collected from the evidence, were, that the prisoner was charged with robbing one John Day of his pocket-book, containing about four hundred dollars, and a warrant was issued for his apprehension, by Inglish, a Justice of the Peace of Big Rock township. The constable, Faulkner, understanding that Baker was a desperate man, armed himself with a loaded pistol, crossed the river to the house of Henry F. Shaw, and, observing Baker coming towards the house, advised several women and children, who were standing out of doors, to retire, as there might be some shooting: That when Baker came up within reaching distance, witness laid his hand lightly upon his shoulder, and said to him, "I arrest you in the name of the State of Arkansas:" at the same time Baker wheeled off; but, before doing so, witness saw him put his hand in his bosom, for the purpose of drawing a pistol. Witness then drew his own pistol; went off some steps, in an oblique direction, to prevent the women and children from being injured by the prisoner: both fired, the prisoner first, though not exceeding a second of time: one ball or shot of prisoner's pistol struck witness' pocket-book; another entered his thigh: witness, not being able to walk, on account of the shot he had received, was taken back to Little Rock in a yawl. Witness further testified, that he did not read the warrant, nor tell prisoner that he had one; nor did he recollect whether his own pistol, when he drew it, was cocked or not.

Several other witnesses were sworn on the part of the prosecution, whose evidence was substantially the same, with the exception that no one testified that Faulkner was shot. The Attorney for the State then introduced the official bond of Faulkner, as Constable of Big Rock township, his oath of office, the warrant of the Justice, and the affidavit upon which it was founded; all which the counsel for the prisoner moved to exclude, "together with all other testimony that proved or tended to prove that Faulkner was Constable of Big Rock

8

township, and that he was then acting in that capacity;" which motion was overruled, and the evidence permitted to go to the jury; to which the counsel for the prisoner took his exception.

There were several witnesses examined on the part of the prisoner, but their testimony was immaterial as regarded the questions raised.

*Borden*, for the appellant.

*R. W. Johnson*, *Atto. Gen.*, contra.

*By the Court*, DICKINSON, J.

The objections to the verdict and judgment are, that the two counts in the declaration are incompatible with each other, and that the Circuit Court erred in overruling the motion to exclude the evidence of the official character of Faulkner.

It is a sacred principle of our law, that an indictment must be so framed, and the offence so clearly stated, that the prisoner may not only be informed of the precise nature of the charges alleged against him, to enable him to make his defence, if he has any; but also to protect him from another prosecution for the same supposed offence, upon which he has been once tried. While it is our duty to guard, with great care, this rule of defence so consonant to justice and reason, we must, at the same time, see that it is not perverted from its intended purposes, and made to protect from punishment those whom the law never designed should fall within its operation. The rule, in relation to joinder of different offences in one indictment, is as plain and well settled as the joinder of several causes of action in one declaration. The rules of pleading are as applicable to the one as to the other. Offences of the same character, though differing in degree, may also be united in the same indictment, and the prisoner tried on both at the same time; and, on the trial, he may be convicted on the one, and not upon the other—as murder and manslaughter; forging a check, and for publishing it knowing it to be false. So burglary and larceny may be joined in the same indictment, under different counts. So, also, a count for a burglarious entry, with intent to steal the goods of A., and stealing them; and a count for a burglarious entry, with intent to steal the goods of another person; and a third count might

be added, charging the breaking and entry with intent to kill or murder. 2 *Leach*, 1103. 2 *Swift's Dig.* 382. The introduction of several counts, which merely describe the same transaction in different ways, gives the public prosecutor greater latitude in proof, so as to avoid a variance; for if not sufficient to sustain one count, it might another; and no objection could be taken, either on demurrer, or by motion in arrest. But every separate 'count should charge the defendant as if he had committed a distinct offence; because it is upon the principle of the joinder of offences, that the joinder of counts is admitted. 3 *T. R.* 106. We believe the law to be now well settled, that different offences may be charged in the same indictment, if the offences are subject to the same punishment. *People vs. Gales*, 13 *Wend.* 312. *People vs. Ryndes*, 12 *Wend.* 430.

Both counts in the indictment are evidently intended to be based upon the statute of maiming. *Rev. St.* 244. The first, upon the 5th section of the act referred to, and charges that the prisoner *shot at* the said Faulkner with intent to kill; the punishment for which, the statute says, shall be the *same as for maiming*. The second count is laid upon the 4th section, that "If any person shall, from malice aforethought, shoot, stab, cut, or in any manner wound and disable, any person, he shall be deemed guilty of maiming." By the 9th section of the act of 17th December, 1838, modifying the penal code to correspond with the establishment of a penitentiary, "Whoever shall be convicted of maiming, shall be imprisoned in said jail or penitentiary house, not less than one nor more than seven years;" but is totally silent, and makes no other provision for the punishment of *shooting at with intent to kill*, than before specified in the Revised Code, which was the same as for maiming, viz: "a fine not exceeding three thousand dollars, and imprisonment not exceeding seven years;" which imprisonment was to be in the common jail of the county, and which the General Assembly has not deemed it proper to change. Consequently, upon the count for maiming, the punishment is imprisonment in the penitentiary; for shooting at with intent to kill, in the common jail of the county. It may perhaps be contended, that from the difference in punishment to be inflicted in two different places, it presents such an incongruity as to be fatal to the joinder of the two counts; or

that the prosecutor should have been required to make an election upon which count he would proceed. If ever there was any thing in this objection, it should have been addressed to the discretion of the Court, before conviction. In cases of felony, where two or more distinct and separate offences are contained in the same indictment, the Court, in its discretion, may quash the indictment, or compel the prosecutor to elect upon which charge he will proceed. In this State, the Attorney is prohibited from entering a *nolle prosequi* on any indictment, or in any way to discontinue or abandon the same, without the leave of the Court. *Rev. St.*, sec. 109, *p.* 301. In point of law, it is no objection that two or more offences, upon which the same or a similar judgment may be given, are contained in different counts of the same indictment. It therefore forms no ground of a motion in arrest of judgment; nor can it be objected to on demurrer, or on writ of error. *Rex vs. Young*, 2 *Peake's N. P. R.* 228, *n.* It is every day's practice to charge offences in different ways in the same indictment, for the purpose of meeting the evidence, as it may come out on the trial. Each of the counts on the face of the indictment, purports to be for a distinct and separate offence; and the jury very frequently find a general verdict, as in this instance, on all the counts, although only one offence is proved. If the different counts are inserted in good faith, for the purpose of meeting a single charge, the Court will not even compel the prosecutor to elect; and where the punishment is fine and imprisonment, the prosecutor is permitted to join and try several distinct offences in the same indictment. If, as contended for by the counsel for the prisoner, the two counts, for maiming, and shooting at with intent to kill, could not be united and tried in the same indictment, it would have been necessary to have set out each offence in a separate indictment. In such case, he could have been tried for maiming, and sentenced to the penitentiary for the same term; and, if convicted upon the other, confined for the time specified in the common jail of the county, after the termination of the imprisonment in the penitentiary, or *e converso.* Surely, then, it is no cause of complaint to the prisoner, that he has been tried upon both counts. As, by the finding of a general verdict, the lesser offence is merged in the greater, and the punishment is less than it might be by law, it comes

with a bad grace from the prisoner, who is benefited by the joinder and general verdict. That objection is wholly untenable.

As to the question of the evidence of the official character of Faulkner, and that he was acting in that capacity, we understand the rule to be, that in giving evidence of matter in aggravation, the distinction is, that where the aggravating matter is the immediate consequence of the offence for which the defendant is on trial, it may be shown; but if it is a distinct crime, not necessarily connected with the offence charged in the indictment, it cannot be received. And this doctrine was held in the case of *The King vs. Turner and others*, 1 *Strange*, 140, which was on an indictment for a riot, where the defendant having come in and confessed, the prosecutor, to aggravate the fine, produced affidavits that a young gentleman, who was then in the room and ill, was so frightened that he died, though previously in a fair way to recover. The affidavits were permitted to be read, because this was the immediate consequence of the riot.

The natural leaning of the mind, observes Lord KENYON, 1 *East.* 314, is "in favor of prisoners;" and the mild manner in which the laws of this country are administered, renders it proper that matter in mitigation should be received, lest the punishment should be disproportioned to the offence. On the other hand, offenders should not be permitted to escape too easy; therefore, matter in aggravation may be given, of any of the consequences flowing from the crime. This rule is reasonable and just, and founded upon common sense; otherwise, the punishment in all riots, conspiracies, combinations, assaults and batteries, and the like, without regard to the circumstances, must always be the same, which would be unreasonable.

Generally speaking, it is not competent for a prosecutor to prove a man guilty of one felony, by proving him guilty of another; but where several felonies are connected together, and form part of one entire transaction, then the one is evidence to prove the character of the other. *Rex vs. Ellis*, 6 *B. & C.* 145. *Eng. Com. Law Rep.* XIII. 123. 9 *D. & R.* 174. *S. C. Russ. & Ry.* 375. In the case of *Rex vs. Wilie*, 1 *New Rep.* 94; *S. C.* 2 *Leach*, 983, Lord ELLENBOROUGH said, "he remembered a case where a man committed three burglaries in one night: he took a shirt at one place, and left it at another; and

they were all so connected, that the Court went through the history of the three different burglaries." Where it becomes necessary to prove a guilty knowledge on the part of the prisoner, evidence of other offences committed by him, though not charged in the indictment, is admissible for that purpose. If it be material to show the intent with which the act charged was done, evidence may be given of a distinct offence not laid in the indictment. Thus, upon an indictment for maliciously shooting, if it be questionable whether the shooting was by accident or design, proof may be given, that the prisoner, at another time, intentionally shot at the same person. *Rex vs. Lake, Russ. & Ry.* 531. All the authorities concur, that the intention and design of the party are best explained by a complete view of every part of his conduct at the time, and not merely from the proof of a single and isolated act or declaration: and it may so happen, that, from the nature of the offence charged, it is impossible to confine the evidence to proof of a single transaction.

The question then recurs, was the evidence objected to by the prisoner in this case admissible?

In the case of *Rex vs. Thompson*, 1 *Eng. Crown Cases*, 80, the prisoner was charged, upon indictment, first, with maliciously stabbing and cutting Richard Southerdon, with intent to murder; secondly, with intent to disable him; and, thirdly, with intent to do him some grievous harm. The Court permitted evidence that the stabbing was done in attempting to make an arrest as constable. The authorities are so numerous upon this subject, and the principle so clear, that the evidence of the official character of Faulkner, and of his being then engaged in the discharge of his duties as a public officer in arresting a criminal, was, as connected with the whole transaction, legitimate evidence, that we deem any further argument or illustration unnecessary.

There is certainly no good cause assigned by the prisoner for setting aside the judgment of the Court. But the statute requires us to examine the record, and award a new trial, or reverse or affirm the judgment or decision of the Circuit Court, as the case may be. In doing this, it becomes necessary to examine the whole record; for so humane is the law, and so careful of the rights of all under its protection, that

Baker *vs.* The State.

an assignment of errors, or a joinder thereto, is dispensed with, lest there should be an omission to set forth an objection to the proceedings, which might exist, and which, it is presumed, this Court would not overlook or disregard.

We have already stated the result of our convictions, that the crime charged in the count of the indictment for "shooting at with intent to kill," is still punishable as declared by the Revised Code, viz: by fine and also by confinement in the common jail of the county. The second is for maiming, and the punishment confinement in the penitentiary. In the view which we take of the case, it is immaterial, as far as the present inquiry extends, whether the first count was sustained by evidence, or not. It is the second count upon which the whole question turns: and, first, we will consider the offence itself for which the prisoner stands indicted on that count. It is conceded to be for maiming. This offence, at common law, is defined to be "the violently depriving another of the use of such of his members as may render him the less able in fighting, either to defend himself or to annoy his adversary. 4 *Chitty's Black.* 150. But our statute has somewhat changed the common law, and declares maiming to consist "in unlawfully disabling a human being, by depriving him of the use of a limb or member, or rendering him lame, or defective in bodily vigor;" by which we understand, that the act being unlawful in itself, evidencing a malicious intent, it is immaterial by what means, or with what instrument, the injury is effected, provided the crime is consummated by depriving the party of the use of a limb or member of his body, or that the consequences of the injury sustained render him either *permanently lame*, or by any means affect his bodily vigor, by decreasing his strength, activity, or the like.

Having thus laid down what we deem to be the true definition of the term *maiming*, as used in the first section of the statute, and what it was essential to prove to sustain the second count of the indictment, we will now proceed to inquire whether the testimony, as stated in the bills of exception, corresponds with and supports the whole of the material averments in the indictment. For though, in criminal cases, it is sufficient for the prosecutor to prove so much of the charge as constitutes an offence punishable by law, yet any material difference

between the statements in the indictment and the evidence, as to the offence charged, will be fatal. The second count of the indictment being founded on the 4th section of the act alone, we have not deemed it necessary to extend our remarks to a prosecution upon the 2d and 3d sections of that act; for, to bring the charge within them or either of them, the indictment must be so framed as to meet their provisions.

The only evidence bearing upon what we consider the gist of the question, is that of Faulkner himself, who testifies that he was shot, and, from the consequences of it, was so far disabled as to be unable to walk at the time. Does this evidence support the averment in the indictment, that he was thereby *disabled* in the sense and meaning of the statute? We think it does. For having proved the effect of the wound, and there being no testimony introduced by the prisoner, rebutting this evidence, where the means were in his power, showing that the injury was but temporary, from which the witness had recovered, furnishes a forcible inference against him; and the existence of the disabling having once been proved, its continuance is presumed, till proof be given to the contrary. *Doe vs. Palmer*, 16 *East*. 55. 1 *Stark*. 55. 2 *ib*. 688. From the fact of a wound having once been given, its nature raises a very strong presumption of its continuance, and that the party did not recover from its effects immediately; and as there is no particular time when the presumption ceases, it still continues. We are therefore bound to presume in favor of the verdict.

There is, however, another question raised by the record itself, as to the proceedings of the Court after the verdict of the jury; and whether the proper judgment thereon has been pronounced by the Court. The judgment is, that the said Franklin T. Baker, *alias* Franklin T. Beiquett, be committed to the jail and penitentiary house of the State, for the full space and term of five years from the twenty-sixth day of March, A. D. 1841, for shooting at with intent to kill, and that he pay all the costs of this prosecution, and stand committed until the sentence of the law is complied with." The objection to this proceeding of the Court, is, that it had no discretionary power as to the punishment, but, in accordance with law, must by regular judgment carry it into effect. Here the prisoner was found guilty upon

both counts in the indictment; for one of which, maiming, confinement in the penitentiary is the proper punishment, and to which he was properly sentenced by the jury. But the Circuit Court, instead of carrying out the verdict, wholly overlooked the second count, and gave judgment that the prisoner be committed to the penitentiary, *for shooting at with intent to kill*, only, thereby wholly disregarding the verdict of the jury upon the only count for which such a punishment can be legally inflicted; and ordered the punishment to be imposed upon the first count, not as stated in the judgment of the Court, in accordance with the verdict of the jury, but, as we conceive, in direct contradiction to it. For the law declares the punishment *for shooting at with intent to kill*, shall be both fine and confinement in the common jail of the county, the Legislature not having made it a penitentiary offence.

There is no such error in the record and proceedings of the Court below, as to entitle him to a new trial. The judgment of that Court, being erroneous in not awarding the judgment upon the proper count, under the verdict of the jury, must be set aside; but there is no sufficient cause for awarding a new trial, or discharging the prisoner.

Case remanded, with instructions to enter up the sentence of the law, in conformity with the finding of the jury on the second count of the indictment, which is for maiming.