Howard v. The State.

*3. EVI-DENCE: Proving one felony by evidence of another.*

---

HOWARD v. THE STATE.

1. CRIMINAL LAW: *Prisoners right to copy of indictment.*
   In criminal prosecutions the accused is entitled by the Declaration of Rights, to counsel, process for witnesses, trial by jury, and to have a copy of the indictment before arraignment; but the Legislature has the power to regulate the manner of securing these rights to him; and by Statute, he can not, in a prosecution for an offense not capital, have a copy of the indictment, without tendering the fee for the copy.

APPEAL from *Benton* Circuit Court.
Hon. J. H. BERRY, Circuit Judge.

*E. P. Watson*, for appellant:
Appellant was entitled to a copy of the indictment before

plea.   *Sec.* 10, *Bill of Rights*;  *Cons. Ark.*, sec. 1826,.
*Gantt's Dig.*; *Futs.* v. *State*, 8 *Ohio* (*State*), 102 ; *Smith*.
v. *State*, 8 *Ohio*, 294.

*C. B. Moore, Attorney-General*, for the  State :

The clause in  section 10, Bill of Rights, Cons., 1874, is
the same, almost *verbatim*, as in  section 11, Bill of Rights,.
Const., 1836.

Section 1825, Gantt's Digest, provides that in *capital cases*
a copy of the indictment shall be served on defendant, etc. ;.
but section 1826, Ib., only  provides that  he  shall  have a
copy ( in all other than capital cases) *on payment of the fees*.
*for same*.   These sections are taken from the Revised Statutes,
and have been the law since March 1, 1838.   They declare, as
the Legislature had a  right to  do, how and  under what re-
strictions the right to a copy shall be exercised.

No fees were  tendered or  offered, and no  showing was.
made that defendant was unable to pay them.

The Ohio cases cited for appellant have no bearing.   In
both of them the  question of  *time for the service of a copy*
enters, under the Ohio Statutes.

It does not appear that defendant was not on bail.   If not.
in custody, he had no right to a copy of the indictment, even·
if a capital case.   *Dawson* v. *State*, 29 *Ark.*, 116.

ENGLISH, C. J.   The indictment in this case was returned.
into the Circuit Court of Benton county, by the grand jury,.
on the twenty-ninth of September, 1881, charging appellant,.
W. J. Howard, with  grand larceny—stealing a  mare and.
saddle.

On the same day he was brought into court in custody of·
the sheriff, informed of the  nature  of the charge against.
him, and being unable to employ counsel, an attorney of
the court was appointed to defend him, and the cause set.
for trial on the first of October.   On that day he appeared

Howard v. The State.

in court in his proper person, as well as by attorney (the record states), and not being ready for trial on account of the absence of certain witnesses, the cause was continued until the third of October, on which day he again appeared, etc., was formally arraigned, pleaded not guilty, was tried by a jury, found guilty, moved for a new trial on the ground that he had not been furnished with a copy of the indictment before arraignment, and the motion overruled.

From a bill of exceptions taken by appellant, it appears that on the third of October, before he was arraigned, he, through his attorney, demanded of the court that he have a copy of the indictment, duly certified by the clerk as such, served upon him before he entered his plea. Whereupon the court asked him if he had, since the filing of the indictment in court, had access to the same, to which he replied, through his counsel, that he had. Thereupon the court offered to him the original indictment, and refused to order the clerk to make out a certified copy thereof, and have it served upon him, and ordered him to be forthwith arraigned and to plead to the indictment. No fees were tendered, or offered to be tendered, to the clerk for a copy of the indictment, and appellant made no showing that he was unable to pay the fees of the clerk for such copy.

The only question presented on this appeal is whether the court below erred, upon the above facts shown by the record entries, and the bill of exceptions, in refusing to order the clerk to make out a certified copy of the indictment, and that it be served upon appellant before his arraignment and plea.

At common law, the accused, in case of treason or felony, was not entitled to a copy of the indictment; but in offenses inferior to felony, the right of having a copy was, at all times, admitted. 1 *Chitty, Cr. Law*, 403–4.

*Section* 11 *of Our Declaration of Rights of* 1836 pro-

vided :—"That in all criminal prosecutions the accused hath a right to be heard by himself and counsel : *to demand* the nature and cause of the accusation against him, and to have a copy thereof," etc.

Had there been no legislation to regulate the enforcement of this section of the Declaration of Rights, the courts might have made rules of practice to secure to persons accused of crimes the benefits intended by it, or have looked to Statutes of the British Parliament in aid of or to supply the defect of the common law, made prior to the fourth year of James I., so far as they were applicable to our form of government, etc.    *Gantt's Dig.*, sec. 772.

But on the third of February, 1838, the legislature passed an act regulating criminal proceedings, which became *Chapter 45 of the Revised Statutes*, and contained the following sections, among others :—

"Section 110.—It shall be the duty of the clerk of the court in which an indictment against any person for a capital offense may be pending, whenever the defendant shall be in custody, to make out a copy of such indictment, and cause the same to be delivered to the defendant, or his counsel, at least forty-eight hours before he shall be arraigned on such indictment ; but the defendant may, at his request, be arraigned and tried at any time after the service of such copy.

"Section 111.—Every person who shall be indicted for an offense, who shall be in custody, or held by recognizance to appear and answer such indictment, shall, on demand, and on the payment of the fees allowed by law therefor, be entitled to a copy of the indictment, and all endorsements thereon."

Section 112 provides for the appointment of counsel for persons accused of felony, who are unable to employ any, etc.

Sections 110 and 111, as above copied, have never been altered or repealed, and they were carried into *Gantt's Dig.* as sections 1825–6. They are also in harmony with the *Bill of Rights* adopted subsequent to that of 1836.

Section 11 of the *Declaration of Rights* of 1864, is a literal copy of the same section of the *Declaration of Rights* of 1836.

Section 8 of the *Bill of Rights* of 1868, provides that:—
"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury, etc., and to be informed of the nature and cause of the accusation against him." The words "*and to have a copy thereof,*" being omitted. But they were restored in the tenth section of the *Declaration of Rights* of 1874, which provides that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, etc., and to be informed of the nature and cause of the accusation against him, and to have a copy thereof."

It is only in capital cases, when the accused is in custody, that the Statute imposes the duty upon the clerk to make out a copy of the indictment, and cause it to be delivered to him, or his counsel, at least forty-eight hours before arraignment. In all other cases, when the accused is in custody, or on recognizance, he has a right to such copy, on application to such clerk, and payment of fees. *Dawson* v. *State*, 29 *Ark.*, 116.

Perhaps (though the question is not presented in this case), if it be shown to the court that the accused is unable to pay for a copy, and it has been refused by the clerk for that reason, it would be the duty of the court to order the clerk to furnish it.

The accused is entitled, under provisions of the *Declaration of Rights*, to counsel, process for witnesses, a trial by jury, and to have a copy of the indictment ; but it is within

the province of the legislature to regulate the manner of securing to him these rights.

The Statute regulating the furnishing of a copy of the indictment has been administered in the criminal practice of this State, under all the constitutions, for forty years, and there has been no decision that it was in conflict with the provisions of any of them.

Under Article VI of the *Federal Bill of Rights*, the accused is entitled to be informed of the nature and cause of the accusation against him.

In *United States* v. *Bickford*, 4 *Blatchford*, 339, the defendant applied to the court for an order, that a copy of the indictment be furnished to him, by the government, before trial, and relied upon the above article. The Court held that no copy of the indictment could be furnished at the expense of 'the government, inasmuch as the law had made no provision therefor. That was not a capital case. In treason, and other capital offenses, an act of Congress provides that the accused shall be furnished with a copy of the indictment before trial. *Rev. Stat. U. S., Sec.* 1033; *United States* v. *Curtis*, 4 *Mason*, 232.

A section of the Revised Statutes of New York, like ours, provided that every person in arrest, or on recognizance, to answer an indictment, should on demand, and paying the fees allowed by law, be entitled to a copy of the indictment, etc. *Colby's Cr. L.*, 265.

In *People* v. *Warren*, 1 *Wheeler's Cr. Cases*, 140, it was ruled that the counsel for the accused had no right to demand of the district attorney a copy of the indictment; that he must apply to the clerk, whose duty it was to furnish the copy on payment of fees.

Under the Statutes and practice of the several states and the United States, differing somewhat in minor provisions, the prisoner, (says Mr. Bishop), may have a copy of the

indictment furnished at his pleasure, etc. He should be careful not to waive the right if he wishes to exercise it, and should keep himself within the terms of the Statute of his own State. 1 *Bishop Cr. Pr.*, sec. 959, and cases cited in notes.

In this case the indictment was short and simple, charging appellant in the usual form, with stealing a mare and saddle. On the day it was found, twenty-ninth September, he was brought into court, informed of the nature of the charge, an attorney appointed to defend him, and the cause set for trial on the first of October. On that day, it was put over to the third, at his instance, on account of absent witnesses. From the time the indictment was filed in court, to the day of trial, he had access to it. It is not made to appear that he or his counsel applied to the clerk for a copy of the indictment, and that it was refused. But on the day of trial, before arraignment, he demanded of the court an order that he have a copy of the indictment, duly certified by the clerk, served upon him before he entered his plea. It is made to appear, by the bill of exceptions, that no fees were tendered, or offered to be tendered, to the clerk for such copy, and that appellant made no showing that he was unable to pay the fees. The order was demanded of the court as a constitutional right, regardless of the Statute regulating the manner in which the right is to be obtained. As demanded, it was refused by the court, and properly on all the facts made to appear.

Neither of the Ohio cases relied on by the counsel for appellant is applicable to the question presented for decision in this case.

In *Smith* v. *State*, 8 *Ohio*, 294, Smith was convicted for uttering counterfeit money, and moved in arrest of judgment on the ground that he had not been furnished with a copy of the indictment twelve hours before trial as provided

by Statute. The court held that the Statute was directory, and that the accused had waived the right to have a copy of the indictment, by going to trial without demanding it.

In *Fouts* v. *State*, 8 *Ohio State*, 98, Fouts was convicted of a capital offense, and moved in arrest, and assigned as error, that he had not been furnished with a copy of the indictment before trial, It appears from the opinion of the court, that by a constitutional provision, like ours the accused had the right "to demand the nature and cause of the accusation against him, and to have a copy thereof." It also appears that a Statute of Ohio provided that:—"A copy of the indictment, etc., shall be delivered to every person who may be indicted for an offense, the punishment whereof is capital, at least twelve hours before the trial. The court held, as in the above case, that the right to a copy was waived by going to trial without claiming it, and so this court ruled in *Dawson* v. *State, Sup.*

Affirmed.