MORLEY, COMMISSIONER OF REVENUES *v.* CAPITAL TRANSPORTATION COMPANY.

4-9198                                                    232 S. W. 2d 641

Opinion delivered June 12, 1950.

Rehearing denied October 2, 1950.

*H. Maurice Mitchell* and *O. T. Ward,* for appellant.

*House, Moses & Holmes,* for appellee.

LEFLAR, J.   The issue in this case is whether the Capital Transportation Company's "trackless trolleys," large passenger busses operated by 150-horse-

power electric motors receiving their energy from overhead wires, are within the taxing provisions of Act 115 of 1939 (Ark. Stats., § 75-206). That Act levies a tax upon all "motor busses (which) are operated on certain designated streets, according to regular schedules, in lieu of street cars, and the operators of such motor busses pay a valuable consideration for that privilege not charged against other motor vehicles."

The Company sought an injunction restraining the Commissioner of Revenues from collecting the statutory tax upon its electrically powered busses, and the Commissioner cross-complained asking for a judgment in the amount of the taxes allegedly due. The Chancellor granted the injunction as prayed by the Company, and the Commissioner appeals. The Company does not deny that the General Assembly may properly levy a tax upon these electrically powered busses; the problem is whether it has done so. This presents to the Court the single question of what is the correct interpretation of Act 115.

Act 115 reads as follows:

"An Act to Levy a Tax on Motor Busses Operating Over Definite Routes and in Lieu of Street Cars.

"Whereas, it has become necessary for persons and companies operating street cars in some of the cities and towns to replace the street cars with motor busses in order to provide an adequate and necessary service, and in the future it will be required of such persons and companies to convert other street car lines into motor bus lines, in order to continue the operation of such transportation systems under their franchise; and

"Whereas, such persons and companies should pay a reasonable fee for the operation of such busses in lieu of street cars which did not pay a license fee to the state, and

"Whereas, other motor vehicles pay a license fee to the state. Therefore,

"Be it enacted by the General Assembly of the State of Arkansas:

"Section 1. Hereafter, where motor busses are operated on certain designated streets, according to regular schedules, in lieu of street cars, and the operators of such motor busses pay a valuable consideration for that privilege not charged against other motor vehicles, the owners and/or operators of such motor busses shall pay to the state an annual motor vehicle and license fee of 45 cents per horsepower of the rated horsepower of the motor propelling such motor bus, and in addition thereto shall pay $2.50 for each passenger seating capacity of such motor bus or busses." (Repealing and emergency clauses omitted.) The Act was approved on Feb. 22, 1939.

It is established that the Capital Transportation Company has for many years operated a public transportation system on the streets of Little Rock and North Little Rock. For a time the Company operated only electric street cars which ran on fixed metal rails, but during the 1930's it began using gasoline motor busses on some of its routes. In each instance city ordinances were enacted authorizing the change-over. Since 1939 the tax fixed by Act 115 has been paid on these busses. In 1947, again under authorization of city ordinance, the Company began using and now has in operation 35 of the "trackless trolleys" which it claims are not taxable under Act 115. The old street cars have been eliminated entirely and the metal tracks paved over. The two types of busses, those powered by gasoline motors and those powered by electric motors, now operate in lieu of the old street cars on all the Company's lines and routes.

Each of the 35 new busses has an individual 150-horsepower electric motor which receives its energy from overhead trolley wires. The busses have pneumatic rubber tires which roll directly on the pavement surface of the street, and they may be driven a maximum of twelve feet on either side of the overhead wires, thus giving them maneuverability over a 24-foot width on the side of the street where they are driven. Separate sets of overhead wires are maintained on each side of a street.

The purpose of Act 115 appears clearly from its language. It was to levy a tax on busses which ran directly on the pavements and which were substituted for the untaxed street cars that operated on metal rails and not on the pavement. The tax was set at a lower figure than that levied on other busses of the same size and general characteristics,[1] because other busses made a more general use of the State's highways and because municipal transportation companies pay other taxes that appeared to justify an equalizingly lower levy on busses whose use was limited to fixed schedules and routes within a given city. The tax was designed to put such specialized busses upon a tax-paying parity with other pneumatic tired vehicles which similarly ran upon the pavements and not upon metal rails. Its purpose is evident both from the title and the preamble of Act 115, and also from the body of the act following the enacting clause.[2]

Accepting this purpose in Act 115, the Act still would not achieve its purpose as to busses operated by electric motors if they were by its terms omitted from its coverage. The Company contends that its "trackless trolleys" are not "motor busses" at all, that the statutory term "motor bus" applies only to self-propelled vehicles, and does not include busses whose motors are powered by energy furnished through outside electric wires.

What did the General Assembly of 1939 mean when it used the words "motor busses" in Act 115? The answer cannot be arrived at merely by looking in the dictionary, but must be discovered by examination of the statute as a whole. *Holt* v. *Howard*, 206 Ark. 337, 175 S. W. 2d 384; *Elizabeth Arden Sales Corp.* v. *Gus Blass*

---

[1] Under Pope's Dig., § 6615 (a) and (d), in effect when Act 115 was enacted, ordinary gasoline powered motor busses were charged an annual tax of 45 cents per horsepower on the motor plus $2.50 for each passenger-carrying capacity plus $1.50 for each 100 pounds of gross weight of the vehicle. Act 115 imposed the first two items of tax only, and not the last one named, upon the busses to which it applied.

[2] It is permissible to examine both the title and the preamble of an act to discover its meaning when ambiguity in its text is urged. See cases cited in Anderson, Drafting a Legislative Act in Arkansas, 2 Ark. L. Rev. 382, at 386 and 388.

*Co.,* 150 F. 2d 988, 161 A. L. R. 370 (C. C. A., 8), *cert.* denied, 326 U. S. 773, 66 S. Ct. 231, 90 L. Ed. 467.

For one thing, this type of bus was already well known in the municipal transportation industry in 1939. See *City of Dayton* v. *De Brosse,* 62 Ohio App. 232, 23 N. E. 2d 647, decided Feb. 2, 1939, and *Memphis Street Ry.* v. *Crenshaw,* 165 Tenn. 536, 55 S. W. 2d 758, decided in 1933, involving the operation of "trackless trolleys" in Dayton, Ohio, and Memphis, Tenn., respectively. If it was the purpose of the legislature to tax busses which ran on the pavement rather than on rails, deliberate omission of a known type of such busses from the new enactment was highly improbable.

For another thing, this type of bus satisfies all the incidental descriptive provisions contained in the statute. These 35 busses "are operated on certain designated streets." They are operated "according to regular schedules." They are operated "in lieu of street cars." Furthermore, the operators "pay a valuable consideration for that privilege not charged against other motor vehicles." All these facts are assured by the terms of the ordinance under which the Company operates the busses, and are freely admitted by the Company.

Everything about the statute makes it appear that when the legislature used the term "motor busses" it meant "busses moved by individual motors." The legislature was making a distinction between street cars operating on rails and motor busses operated "in lieu of street cars." It was not distinguishing between busses moved by internal combustion motors and busses moved by electric motors. It was not distinguishing between busses whose motors are powered by gasoline poured in through a tube and others whose motors are powered by electric energy run in on a wire. There is nothing in the statute limiting the tax to busses which carry a fuel tank.

The word "motor" is discussed in 19 Encyclopedia Americana, p. 514: "A machine for utilizing some

power, as gas expansion or electric current, to do useful work . . . The word motor came into common use with the commercial development of electricity. The makers of the first electric machine that was marketed for delivering power chose to call it an electric motor, and since then a reversed dynamo has always been a motor. Then came Daimler's perfecting of the 'petrol' engine, for use on bicycles, which is now technically called an internal combustion engine, but popularly called a motor." Webster's New International Dictionary (2nd ed.) under the noun "motor" gives successive illustrations: "(4). A rotating machine which transforms electrical energy into mechanical energy," and "(5). Any internal combustion engine."

"Trackless trolleys" are busses which are moved, controlled and directed from within their own bodies by means of individual electric motors. We believe that, in the light of the whole phrasing and purposes of Act 115, they are "motor busses" within the sense in which that term was used in this particular act.

Appellee Company argues that if the term "motor bus" is broad enough to include "trackless trolleys" it is broad enough to include street cars also. The quick answer to that is that a street car is not a bus. A street car is a vehicle that operates on fixed metal rails, whereas a bus has pneumatic tires and operates on the regular street surface. That difference represents the reason why the General Assembly of 1939 saw fit to levy a tax on busses operated "in lieu of street cars."

The Company also argues that because "trackless trolleys" can not be driven over the State highway systems generally, but only over fixed city routes, they should not be taxed under Act 115. But the gasoline motor busses taxed by Act 115 are similarly limited in their operation to fixed city routes; the moment they enter upon broader operations over the State's highways generally they lose the special status given them by Act 115 and become subject to the higher fees collected on busses not "operated on certain designated streets, according to regular schedules, in lieu of street

cars." The applicability of Act 115 is limited to busses which in fact do not operate over the State highway system generally, and it makes no difference whether they stay within their fixed city routes merely because their drivers keep them there in obedience to orders or because the bus is so constructed that a driver could not disobey orders by driving across the state with it even if he wanted to.

Finally, the Company relies upon two decisions, from Tennessee and Georgia, which held that "trackless trolleys" were not within the coverage of particular taxing statutes of those states. We agree that both these decisions are sound, but neither of them involves a statute like our own.

In *Memphis Street Ry.* v. *Crenshaw,* 165 Tenn. 536, 55 S. W. 2d 758, the question was whether "trackless trolleys" were within the general registration and licensing law that applied to all automobiles and motor vehicles in the state. The Court pointed out that "the primary purpose of the law is to secure registration, largely to insure identification, recorded opportunity for the tracing of a rapidly moving class of vehicles of an itinerant, peripatetic, even migratory nature. . . . If this is the primary object of this registration law, then it is difficult to conceive how vehicles thus absolutely confined to fixed routes . . . could be contemplated as within the objective of the lawmakers." Similarly, it can not be contended that the comparable general automobile registration law of Arkansas is applicable to "trackless trolleys," nor is that contention now being made.

*Thompson, Comr. of Revenue* v. *Georgia Power Co.,* 73 Ga. App. 587, 37 S. E. 2d 622, is the other case. It presented the question whether a "trackless trolley" was a "motor bus" within the meaning of the general automobile registration law of Georgia. The Court held that it was not. As in the Tennessee case, the Court looked to the function and purpose of automobile registration, found that its function and purpose were applicable only to the types of vehicles commonly known as

automobiles, and concluded that a "trackless trolley" was not an automobile in the sense employed by the general registration act.

As to these cases, we can only hold that Act 115 of 1939 is a different kind of statute. It is not a part of the general automobile registration law of Arkansas. Act 115 is designed merely to fix an amount of state tax payable by motor busses "operated on certain designated streets, according to regular schedules, in lieu of street cars."

There is nothing in the nature of "trackless trolleys" that makes inappropriate the application of the statute to them. Everything in their physical characteristics and mode of operation makes it as fair and as appropriate for the statute to be applied to them as to other motor busses falling within the statutory description. It would be unfair to the owners of gasoline motor busses and contrary to the spirit and purpose of the statute if "trackless trolleys" were not taxed under it. The statute purports to cover these busses, and we hold that there is no justification for an interpretation that would take them out of the coverage which appears on the face of the statute.

The decree of the Chancery Court is reversed and remanded with directions that a decree be entered in favor of the cross-complainant for the amount of the tax found to be due from the appellee Company under Act 115.

McFADDIN, J., dissents; GRIFFIN SMITH, C. J., not participating.

ED. F. McFADDIN, Justice (dissenting). I respectfully dissent because the majority opinion, as I see it, contains two errors, either of which is fatal to the conclusion which the majority has labored to reach. These are: (1) refusal to accept the definition of words; and (2) violation of a cardinal rule of statutory construction.

I. *Refusal to Accept the Definition of Words.* The Act 115 of 1939 does not mention electric trolleys: instead, it levies a tax only on "motor busses." I submit

that an electric trolley is not a motor bus; and that no amount of judicial legerdemain can change the plain meaning of the words "motor bus." Webster's Dictionary, long before the passage of Act 115 of 1939 and continuously up to the present time, defines motor bus to be "an automotive omnibus." An "omnibus" is "a heavy public vehicle . . . designed to carry a comparatively large number of passengers." But a motor bus is an "*automotive* omnibus"; and Webster's Dictionary defines "automotive" as follows: "self propelling; . . . hence, of, pertaining to, or concerned with vehicles . . . that contain within themselves means of motion, control and direction."

The last words quoted prove the point: a motor bus is an automotive vehicle—*i. e.,* one which contains in itself the "*means of motion,* control and direction." An electric trolley does *not* contain in itself the means of *motion*; because the electric trolley receives its motive power from overhead wires and cannot operate when contact is broken with the overhead wire. According to the dictionary definition, an electric trolley—such as is involved in this case—is not a motor bus. The old adage is applicable here, to-wit: a cow has four legs; and calling its tail a leg does not give a cow five legs, because calling the tail a leg does not make it one.

So, in this case, calling an electric trolley a motor bus can never make it one; because an electric trolley does not have within itself the means of *motion*. As I see it, the majority opinion is a resort to judicial legislation to change a dictionary definition, in order to make Act 115 read differently from the way the Legislature worded it. I submit that we should accept the defined meaning of words rather than to legislate other meanings to the words chosen by the Legislature.

II. *Violation of a Cardinal Rule of Statutory Construction.* The majority opinion contains this paragraph:

"There is nothing in the nature of 'trackless trolleys' that makes inappropriate the application of the statute to them. Everything in their physical characteristics and mode of operation makes it as fair and as appropriate

for the statute to be applied to them as to other motor busses falling within the statutory description. It would be unfair to the owners of gasoline motor busses and contrary to the spirit and purpose of the statute if 'trackless trolleys' were not taxed under it. The statute purports to cover these busses, and we hold that there is no justification for an interpretation that would take them out of the coverage which appears on the face of the statute.''

Now I submit that this paragraph shows in itself the fundamental error; because it impliedly admits that the Court is extending a taxing statute beyond its strict language. In *Cook* v. *Arkansas-Missouri Power Corporation*, 209 Ark. 750, 192 S. W. 2d 210, the late and beloved Mr. Justice ROBINS recognized and declared the applicable cardinal rule of statutory construction in this succinct language:

''A statute imposing a tax must be strictly construed against the taxing authority. 'A tax cannot be imposed except by express words indicating that purpose.' (Headnote 3.) *Wiseman* v. *Arkansas Utilities Company*, 191 Ark. 854, 88 S. W. 2d 81.

'' 'Where the intent or meaning of tax statutes, or statutes levying taxes, is doubtful, they are, unless a contrary legislative intention appears, to be construed most strongly against the government and in favor of the taxpayer or citizen. Any doubts as to their meaning are to be resolved against the taxing authority and in favor of the taxpayer . . .' 51 Am. Jur. 366.

'' 'The general rule is that statutes providing for taxation are to be construed strictly as against the state and in favor of the taxpayers . . .' 61 C. J. 168.''

Some of the many other cases to the same effect decided by this Court are: *City of Little Rock* v. *Arkansas Corporation Commission*, 209 Ark. 18, 189 S. W. 2d 382; *Moses* v. *McLeod*, 207 Ark. 252, 180 S. W. 2d 110; *McLeod* v. *Commercial National Bank*, 206 Ark. 1086, 178 S. W. 2d 496; and *McCain* v. *Crossett Lumber Company*, 206 Ark. 51, 174 S. W. 2d 114.

In the case at bar the majority opinion is violating this cardinal rule of statutory construction; because Act 115 does not mention trackless trolleys but only motor busses, and the majority is extending a taxing statute in order to include vehicles not mentioned in the taxing statute.

The language quoted from the majority opinion says that it would be unfair to the owners of gasoline motor busses to tax them and leave untaxed the owners of electric trolleys. I maintain that it is not for this Court to determine whether the Legislature acted wisely in selecting a specific vehicle to be taxed. It is a legislative function to determine the articles to be taxed; and it is not for this Court, under our cardinal rules of statutory construction, to extend a taxing statute beyond the specified articles so taxed. The quoted paragraph from the majority opinion shows most clearly the violation of this rule of statutory construction. I submit that it would be much wiser for the Court to allow the Legislature to do its own legislating, rather than for the Court to invade that field.