Cartrell Lewan McCOY *v.* STATE of Arkansas

CR 02-1277 123 S.W.3d 901

Supreme Court of Arkansas
Opinion delivered October 9, 2003

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

W. H. "DUB" ARNOLD, Chief Justice. This is the second appeal of this case. Appellant seeks to overturn his second conviction for attempted first-degree murder. Finding no error, we affirm.

Appellant was previously convicted of attempted murder in the first degree and residential burglary and was sentenced to a total of thirty-five years' imprisonment. Appellant appealed that conviction to the Arkansas Court of Appeals on the basis that the trial court erred in denying a motion he had made to instruct the jury on the crime of attempted second-degree murder. The court of appeals agreed with appellant and reversed and remanded the case to the trial court. *See McCoy v. State*, 74 Ark. App. 414, 49 S.W.3d 154 (2001). After review was granted by this Court, the case was reversed and remanded, thereby affirming the court of appeals' decision. *See McCoy v. State*, 347 Ark. 913, 69 S.W.3d 430 (2002). A supplemental opinion on the denial of rehearing was issued on April 18, 2002. *See McCoy v. State*, 348 Ark. 239, 74 S.W.3d 599 (2002).

When retried for the attempted murder in the first degree charge, appellant was convicted of attempted first-degree murder and was sentenced to thirty years' imprisonment to run consecutive to the five-year sentence imposed for residential burglary at the first trial. At trial, during cross-examination of the appellant by the State, the prosecutor requested a ruling from the trial court regarding the admission of appellant's prior misdemeanor conviction for third-degree domestic battery. Appellant objected to the admission of the evidence on the basis of Rules 403 and 404(b) of the Arkansas Rules of Evidence, but the trial court overruled the objection and allowed the evidence in.

Appellant now argues on appeal that the trial court erred by allowing evidence of his prior conviction because it had no probative value and was unfairly prejudicial to him in that it could have led the jury to conclude that he had the character trait of engaging in violence directed toward the victim and that on the night in question, in *this* case, he acted in conformity with his violent character. The State argues that this Court should affirm because the evidence of the prior conviction was properly admitted as evidence of lack of mistake or accident and motive under Ark. R. Evid. 404(b); and, further, the probative value outweighed any prejudice under Ark. R. Evid. 403. We agree with the State and affirm.

## I. Standard of Review

 This Court has held that trial courts are afforded wide discretion in evidentiary rulings. *See Hawkins v. State*, 348 Ark. 384, 72 S.W.3d 493 (2002). Specifically, in issues relating to the admission of evidence under Ark. R. Evid. 401, 403, and 404(b), we have held that a trial court's ruling is entitled to great weight and will not be reversed absent an abuse of discretion. *See, e.g., Cook v. State*, 345 Ark. 264, 45 S.W.3d 820 (2001). This Court will, likewise, not reverse absent a showing of prejudice. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000).

## II. Merits

Just prior to trial in this case, defense counsel moved *in limine* to prevent the State from introducing proof that appellant had a prior conviction for the domestic battering of Sarah Battung, the victim in this case, *if the appellant did not testify*. In response, the prosecutor specifically stated that he did not intend to introduce proof that appellant had a prior conviction for the domestic battering of Ms. Battung but did intend to prove that Ms. Battung had obtained a "no contact" court order in connection with appellant's domestic battering conviction. The trial court stated, "You may introduce the no-contact order but leave the assault or whatever it is out."

Appellant did, in fact, testify in his own defense. With regard to the gunshot wounds suffered by Battung, appellant stated that, although he did shoot her twice, he did not intend to shoot her and did not intend to cause her death. His defense was that the shooting was an accident. In the course of cross-examination by the State, appellant stated that he had forgotten that the Jacksonville Municipal Court had issued an order directing him to have no contact with Ms. Battung. Because this was his testimony, and over defense counsel's objection, the court permitted the State to cross-examine appellant about a conviction he received in Jacksonville Municipal Court in August of 1999 that arose out of his conduct in June 1999. The prosecutor asked "You got convicted of domestic battery in the third degree for beating Sarah Battung, is that correct?" The appellant replied, "If you want to word it like that." After appellant's testimony, the State introduced into evidence, as State's Exhibit No. 6, a certified copy of a judgment for third-degree domestic battering that was entered against appellant

in municipal court. Appellant claims that this was error, as the prejudicial nature of the evidence outweighed the probative value. We disagree.

Under Ark. R. Evid. 404(b), evidence of other crimes may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See, e.g., Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003). If the evidence of another crime, wrong, or act is relevant to show that the offense of which the appellant is accused actually occurred and is not introduced merely to prove bad character, it will not be excluded. *Id.* The test for establishing motive, intent, or plan as an Ark. R. Evid. 404(b) exception is whether the evidence of the other act has independent relevance. *Id.* To be probative under Rule 403, the prior criminal act must be similar to the crime charged. *See Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995).

The facts of this case are not in dispute. Sarah Battung, the victim in this case, and appellant had dated for about two and one-half years before their relationship ended on June 30, 1999. Appellant had previously been convicted of domestic battery in the third degree against Ms. Battung and was ordered on June 30, 1999, to have no further contact with her. At trial, Battung testified that, after the two of them stopped dating, appellant would frequently call or try to visit her, attempting to continue their relationship. Battung invariably balked at appellant's attempts to continue seeing her. Battung went on to testify that on the night of August 11, 1999, appellant had phoned her several times at the apartment of Rodney Wilson and that she repeatedly hung up on appellant until she got so frustrated with the frequency of his calls that, during one of his last calls, she cursed him and then kissed another man. After becoming aware of the kiss from the apparent loud reaction of the other people present in Mr. Wilson's apartment, appellant threatened to kill Ms. Battung. After Battung told him that she would call the police, appellant called back and apologized.

That same night, another encounter occurred between appellant and Ms. Battung at Wilson's apartment. Trineka McCoy, appellant's sister, was with Ms. Battung in Wilson's apartment on August 11, 1999. Her testimony was introduced via the reading of a transcript from the first trial. Ms. McCoy apparently opened the door to the balcony of Mr. Wilson's apartment and saw appellant sitting in one of the chairs on the balcony. Appellant was' not

allowed to be at the apartment due to the no-contact order against him in reference to Ms. Battung and the third-degree domestic battery conviction. All the same, appellant forced his way in through the balcony door and, once inside, pulled out a gun. Ms. McCoy testified that once she saw the gun, she ran into another room and soon afterward heard "three or four" loud gunshots.

According to testimony, Ms. Battung was walking from the kitchen to the couch, where she had been sitting, when she saw appellant come into the apartment from the third-floor balcony. She sat back down on the couch and saw the appellant arguing with two other men who had approached him. She then picked up the phone and began dialing 911. At that point, appellant stood and fired shots at her. Two bullets struck her chest and her abdomen, and a third bullet struck a book that was next to her on the couch.

When appellant took the stand to testify in his own defense, he claimed that he "forgot" he had a gun with him that day. He testified that he went over to the apartment because he was angry at the other people present and wanted to talk with Ms. Battung. He averred that he did not intend to kill her at the time he entered the apartment. He testified that he just aimed for the same corner where he fired the first shot. He insisted that he had learned a valuable lesson and inferred that this incident was a mistake. Because appellant indicated that the incident was a mistake or accident, the admitted evidence of the prior conviction for domestic battering was properly introduced to show *absence* of mistake or accident, which is allowable under Rule 404(b).

Appellant further claimed, as was stated above, that he was not aware of the no-contact order in effect at the time. In response to the question from the State as to the reason for the no-contact order, appellant replied that it was for "domestic abuse B dispute." He repeated that he and Ms. Battung had a "domestic dispute" and, when asked if he was convicted of domestic battery in the third degree against the victim, he replied, "If you want to word it like that." Appellant himself opened the door to the introduction of his prior conviction by claiming that he did not remember the no-contact order from the Jacksonville Municipal Court. Appellant was aware of the trial court's ruling limiting the admissibility of his previous conviction; he, therefore, should have limited his responses accordingly. We have held that, under the

doctrine of invited error, one who is responsible for error cannot be heard to complain of that for which he was responsible. *McGhee v. State*, 330 Ark. 38, 41, 954 S.W.2d 206, 208 (1997). Under this doctrine, appellant cannot now claim error.

■ Lastly, regarding credibility, the evidence showed that appellant wrote the victim a lengthy letter even after a second court order to have no contact with her. He asserted that the shooting was an accident and that killing her was not on his mind. After the appellant testified, the State introduced the prior conviction for domestic battery against the victim, the second no-contact order, and the letter. The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Burns v. State*, 323 Ark. 206, 913 S.W.2d 789 (1996).

■ As substantial evidence clearly existed in this case to support the jury's verdict, with or without the introduction of the prior conviction, we affirm.

Affirmed.

HANNAH, J., concurs.

THORNTON, J., not participating.

JIM HANNAH, Justice, concurring. I concur in affirming this case, but on the basis of harmless error. In considering the majority's reasoning, I must state that this case yet again raises concern for the current validity and future viability of the longstanding rule that character evidence is not admissible to prove conduct in conformity with that character. If the rule has not yet been swallowed up by its exceptions, then the rule has so far descended into the gaping maw of the exceptions that the rule is all but lost. The application of the rule in both our trial and appellate courts has deteriorated to the point that legal analysis of the issue of admissibility of character evidence most often begins, and ends, with the assumption that the issue of admissibility of character evidence is only a matter of picking the exception that fits best.

The application of the exceptions has become deeply troubling. The rule is designed to assure that a criminal defendant is tried for the crime charged, and not for past bad acts, or convicted because he or she is a bad person. Where, as in this case, it is apparent that the evidence is being introduced to prejudice the jury, inadmissible character evidence does not become admissible

evidence of lack of accident or mistake just by calling it so. As Justice McFaddin once quoted in a dissenting opinion, "[t]he old adage is applicable here, to-wit: a cow has four legs; and calling its tail a leg does not give a cow five legs, because calling the tail a leg does not make it one." *Morley v. Capital Trans. Co.*, 217 Ark. 583, 591, 32 S.W.2d 641 (1950).

The desire to admit evidence of character is quite understandable. It fits very nicely with a natural human inclination in criminal cases to conclude that if a person committed a criminal act in the past, he or she likely committed the one charged. This inclination is especially seductive where the prior crime and the present crime are serious ones. However, we once stated:

> Many times we have held that evidence of other crimes committed by a defendant is not admissible to prove his guilt of the crime for which he is then on trial. *Williams v. State*, 183 Ark. 870, 39 S.W.2d 295; *Warp v. State*, 91 Ark. 555, 121 S.W. 927; *Alford v. State*, 223 Ark. 330, 266 S.W.2d 804.

*Miller v. State*, 239 Ark. 836, 839, 394 S.W.2d 601 (1965). The same holding can be found stated today. *Jones v. State*, 349 Ark. 331, 78 S.W.3d 104 (2002). The law is dutifully stated by the courts, then an exception is determined, and no error is found. In older cases, decided in times thought by some not to be nearly so enlightened as ours, this court did reverse such cases. *See Alford*, 223 Ark. 330, 266 S.W.2d 804 (1954); *Williams v. State*, 183 Ark. 870, 39 S.W.2d 295 (1931).

The issue of improper admission of character evidence is a most serious one. A discussion by the United States Supreme Court in 1948 casts light on the seriousness of the issue:

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, *Greer v. United States*, 245 U.S. 559, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. *The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge*

*one with a bad general record and deny him a fair opportunity to defend against a particular charge.* The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States*, 335 U.S. 469, 475-76 (1948) (emphasis added). Somewhat more recently in *United States v. Moccia*, 681 F.2d 61, 63 (1 st Cir. 1982), the First Circuit Court of Appeals stated:

Although . . . propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged ... or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment . . . creates a prejudicial effect that outweighs ordinary relevance.

We similarly stated long ago:

It is uniformly held that the prosecution cannot resort to the accused's bad character as a circumstance from which to infer his guilt. This doctrine is founded upon the wise policy of avoiding the unfair prejudice and unjust condemnation which such evidence might induce in the minds of the jury. If such testimony should be admitted, the defendant might be overwhelmed by prejudice, instead of being tried upon the evidence affirmatively showing his guilt of the specific offense with which he is charged.

*Ware v. State*, 91 Ark. 555, 121 S.W. 927 (1909). *See also Howard v. State*, 37 Ark. 265 (1881); *Baker v. State*, 4 Ark. 56 (1843); *United States v. Carrigo*, 25 Fed. Cas. 310 (C.C. D.C. 1802).

What is at issue in excluding evidence of character is providing a fair trial. Failing to abide the rule on character evidence runs the risk of depriving criminal defendants of their constitutional right to a fair and impartial trial. We should also remember, as Justice Fogleman stated in his concurring opinion in *Alexander v. State*, 268 Ark. 384, 389, 598 S.W.2d 395 (1980), "It is the primary function of the judicial system to preserve the rule of law, even if the guilty do escape punishment as a result of the courts' facing up to their responsibility." We must be careful not to sacrifice justice for expediency.

The bottom line is that for over a century we have held that one could only be convicted of a crime if the State proved beyond

a reasonable doubt that the criminal defendant committed the crime. The rule on inadmissibility of character evidence is easily traceable for two hundred years and beyond in Anglo-American jurisprudence. A criminal defendant should not be convicted by substituting evidence of past crimes or bad acts for the required proof. The simple logic and common sense underlying this rule makes the departure from the rule by this court impossible to understand. It also raises the specter of future constitutional challenges to this departure that will doubtless soon be addressed to this court.

Turning to the case at hand, there is no doubt that the conviction on third-degree battery showed that McCoy harmed Battung. The harm might have been caused by a negligent act with a deadly weapon, or a reckless act, or it might have been inflicted by drugging her drink to induce a stupor. We just do not know. We do not even know what the injury was. No more than the bare conviction was introduced into evidence, so we do not know the nature and extent of the battery.

I must note that third-degree battery requires that a person intend to commit the act purposely, recklessly or negligently. Ark. Code Ann. § 5-13-203(a)(2-3) (Repl. 1997). Thus, without more evidence than was introduced in this case, it is impossible to determine what intent was involved in the former crime. Only the Defendant Docket Profile on the battery conviction was introduced. It provides utterly no facts at all, but rather is only a certification of the conviction. Thus, we do not know whether McCoy was convicted of acting purposefully, recklessly or negligently, nor do we know whether a weapon or deadly weapon was used, or no weapon at all. One must then ask how relevant any conviction for third-degree battery is in this case in proving that McCoy purposely attempted to kill Battung on a later occasion.

Further, third-degree battery requires that the perpetrator cause a "physical injury." Ark. Code Ann. § 5-13-203(a)(1). Physical injury is defined as:

(A) Impairment of physical condition;

(B) Infliction of substantial pain; or

(C) Infliction of bruising, swelling, or visible marks associated with physical trauma. . .

Ark. Code Ann. § 5-1-102(14) (Supp. 2003). Under second-degree battery, a serious injury must be inflicted, which is a physical injury creating a substantial risk of death. Ark. Code Ann. § 5-1-102(19) (2003). Clearly, attempting to kill Battung with a pistol would be an injury carrying with it a substantial risk of death. Therefore, a conviction for second-degree battery, properly proven, would be relevant to show a lack of accident or mistake. But we do not have a conviction for second-degree battery, but, rather, we have a conviction for third-degree, a misdemeanor. Second-degree battery is a felony. The State characterized the battery as "beating Sarah Battung." McCoy responded, "If you want to word it like that." No explanation of this comment was elicited by the State.

The bare conviction, the majority holds, "was properly introduced to show *absence* of mistake or accident, which is allowable under Rule 404(b)." Thus, we are told that the third-degree battery conviction is relevant to show that when McCoy pulled the pistol and shot, he did not shoot by accident or mistake, but did so with the purpose of causing Battung's death. That is the required mental state for attempted first-degree murder.

One might weakly argue that the conviction makes it more probable that McCoy shot Battung with the purpose of causing her death. The conviction does show that McCoy had a propensity to harm Battung at a point in the past. Thus, the conviction is relevant. Relevant evidence is evidence having "any tendency" to make the existence of a fact more probable. Ark. R. Evid. 401 (2003). However, although the conviction is relevant, it only makes it more probable that McCoy would commit some harmful act against Battung generally, and thus hardly casts much light on the real issue of McCoy's mental state at the moment of the shooting. The jury had to determine whether McCoy was acting with purpose or a lesser mental state.

There is no similarity between the crimes as the majority notes is required. The majority cites *Sasser v. State*, 321 Ark. 438, 902 S.S.2d 773 (1995), but clearly the two crimes are not similar, and the conviction on third-degree battery therefore must also be excluded on this basis. If the conviction for third-degree battery was for negligently harming Battung, how would that be relevant to show a lack of accident or mistake?

The issue of whether McCoy shot Battung by accident was clearly the issue upon which the State introduced the conviction. Upon objection by McCoy to introduction of the conviction, the prosecutor stated that the prior battery and conviction "shows that's a lack of mistake and lack of accident." McCoy's objection was under Ark. Rules of Evid. 404 and 403. The trial court overruled the objection, and there is nothing more on the issue in the transcript. In his brief, McCoy stated, "Appellant McCoy's defense was that his shooting of Ms. Battung was an accident." The State argues in its brief that, "[t]his court should affirm because the evidence of the prior conviction was properly admitted as evidence of lack of mistake or accident and motive under Ark. R. Evid. 404(b) and the probative value outweighed any prejudice under Ark. R. Evid. 403." The majority states, "Because appellant indicated that the incident was a mistake or accident, the admitted evidence of the prior conviction for domestic battering was properly introduced to show *absence* of mistake or accident, which is allowable under Rule 404(b)."

I must first note that although the majority uses the term "domestic battery," the conviction was for third-degree battery. It was the State that introduced the term domestic battery. Second, while I agree that the conviction might in some weak sense make it more likely the shooting was not an accident, the conviction clearly could not survive Rule 403 analysis. The prejudicial harm so obviously outweighs the probative value as to make discussion of the issue of Rule 403 unnecessary. This is exactly the sort of harm Rule 404 is intended to avoid. Here, McCoy was overwhelmed by prejudice. *See Ware, supra.* What the State intended to do was introduce evidence of character to prove conformity therewith in commission of the crime. This court has allowed the State to do so. Rule 404 prohibits this.

If we have decided to abandon Rule 404, we should say so. The constitutional implications of that decision could then be explored in future cases.

I also disagree with the majority's conclusion that McCoy invited the error. The majority states that by repeating back to the State in examination, "domestic dispute" by stating, "If you want to word it like that," and by denying knowledge of the no-contact order, McCoy opened the door to admission of the conviction. The conviction was for third-degree battery. That domestic battery was mentioned did not raise the issue of the conviction.

Obviously if there was a no-contact order, there was some form of dispute or there would be no order. That conclusion is required by common sense. It hardly opens a door to the conviction.

Finally, I do concur in the outcome, but only because the error was harmless error. The facts show at the least that McCoy pulled out a pistol and started shooting. Battung alone was hit, and hit twice, which tends to show McCoy was aiming at her. There was also evidence that McCoy emptied the revolver at Battung. Additionally, Battung testified that McCoy threatened to kill her earlier in the day before he shot her that night. Battung also testified that McCoy did not point the pistol at anyone else. There was also evidence that prior to entering the apartment, the visitors with Battung goaded McCoy over the phone about kissing Battung, and otherwise attempted to anger him. There was also abundant evidence from the moments just prior to McCoy's entering the apartment that McCoy had not accepted termination of the relationship with Battung and intended to continue it by any means. I would affirm this case on harmless error. *Jones v. State*, 349 Ark. 331, 78 S.W.3d 104 (2002).